No. 89-222

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

MARTIN DUNN and BETTY DUNN,

        Plaintiffs and Appellants,

   -vs-

JOHN WAY and IOWA MUTUAL INSURANCE COMPANY,

        Defendants and Respondents.

APPEAL FROM: District Court of the Third Judicial District,
In and for the County of Deer Lodge,
The Honorable Ted L. Mizner, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Greg J. Skakles; Johnson, Skakles & Kebe; Anaconda,
Montana

    For Respondent:

        Thomas M. Welsch; Poore, Roth & Robinson, Butte,
Montana

Submitted on Briefs: Nov. 21, 1989

Decided: February 5, 1990

Filed:

_Clerk_

Justice John C. Sheehy, delivered the Opinion of the Court.

Plaintiffs Martin and Betty Dunn brought suit in the District Court, Third Judicial District, Deer Lodge County, alleging breach of contract and bad faith against defendants Iowa Mutual Insurance Company and its claims adjuster John Way for failure to promptly settle a claim for damage to a camping trailer and its contents. Upon motion, the District Court entered a stay of proceeding as to the bad faith claims pending resolution of the contract dispute.

Defendants subsequently made a motion for summary judgment, on the basis that they had invoked the appraisal process required under the contract, which plaintiffs failed to comply with prior to filing suit. The District Court granted the motion for summary judgment. The Dunns appeal the stay of proceedings and grant of summary judgment. We affirm the District Court.

The issues raised by the Dunns are:

1. Whether Iowa Mutual properly invoked the policy's appraisal process.

2. Whether interest loss and storage fee claims are material to summary judgment.

3. Whether personal property valuations were at issue, thereby precluding summary judgment.

4. Whether the District Court erred by staying plaintiffs' bad faith claims.

On November 8, 1985, the insured, Martin Dunn, was involved in a single-vehicle accident, which damaged his pickup truck, camping trailer and its contents. The truck and trailer were insured by Iowa Mutual under an auto policy; the trailer's contents were insured under a homeowners' policy. Agreement was reached on the damage claim for the truck, but efforts to reach agreement as to the trailer and its contents were unsuccessful.

Dunn alerted Iowa Mutual Branch Claims Manager John Way of all

claims after the accident, and sent an inventory list of the trailer's contents. In a reply letter dated February 11, 1986, Way informed Dunn that it was necessary for Dunn to choose which items he wished to replace and which he wished to depreciate. Way also informed Dunn that his trailer had been appraised at somewhere between $5,000 to $6,000. Way also requested Dunn to forward the trailer's title so it could be sold for salvage.

On March 7, 1986, Way responded to a letter from the Dunns, asking the Dunns to forward the names of the appraisers who had given quotes ranging from $8,000 to $9,000 for the trailer. Way again requested the title to the trailer so that salvage could occur and storage costs ended.

In correspondence from Way to the Dunns dated April 2, 1986, Way offered a $7,000 settlement for the trailer. No correspondence from Dunn is contained in the record, but it is apparent that that settlement offer was refused. An April 23 letter from Way to Dunn stated:

> Since we seem to be at a stalemate on the settlement of this matter since you do not agree with our evaluation, we feel that our only alternative is to go the appraisal route under the conditions of the policy.
>
> * * *
>
> If you will let us know who you want to represent you will have our appraiser get in contact with him.

Way again wrote Dunn on June 11, 1986, seeking a reply, and reiterating that an appraisal of the trailer's value was in order. Way also reminded Dunn that storage fees for the trailer continued to accrue.

The Dunns subsequently retained counsel, and on July 16, 1986, their attorney sent a letter to Way, contending that Iowa Mutual's position was "totally unreasonable and you have continued to procrastinate and have refused to attempt to negotiate a fair and

equitable offer." In addition, the Dunns' counsel stated that Way's representation as to replacement costs or depreciation of the personal property was "totally repugnant to the terms and conditions of [the] policy as well as § 33-23-202, MCA." Further, the Dunns' counsel maintained that Iowa Mutual's insistence that "the matter be resolved pursuant to the arbitration conditions of the policy" was in violation of § 27-5-111, MCA, et seq. which specifically excepts insurance contracts from mandatory arbitration procedures. Demand was made of Iowa Mutual for the value of the trailer, personal effects, storage fees, loss of use and interest in the amount of $13,997.46.

In reply, Way stated that the replacement cost option referred only to the lost personal property; that § 33-23-202, MCA, speaks to reimbursement of loss of a motor vehicle. Further, Way pointed out that Iowa Mutual sought an appraisal, not arbitration, to settle the matter. Way concluded by offering the Dunns $7,500 for the trailer, $2,500 for the personal property, and again stated the company was not obligated to pay all of the storage fees for the trailer.

The Dunns did not reply to the last letter, but initiated suit on October 15, 1986, alleging violation of the covenant of good faith and fair dealing and unfair claim settlement practices. Defendants filed a Motion for Stay of Proceedings and for Protective Order on January 20, 1987, in order to suspend plaintiffs' bad faith claim and discovery related to it until the underlying breach of contract claim was resolved. A hearing was

4

conducted on March 11, 1987, and the motion was subsequently granted.

The Dunns filed a motion for reconsideration on September 23, 1988. Iowa Mutual filed its brief in opposition on October 12, 1988 and a motion for summary judgment on October 20, 1988. Iowa Mutual based the motion for summary judgment on the fact that the Dunns had "failed and refused to submit to the appraisal procedure under their insurance policy, which appraisal procedure is binding and enforceable as a matter of law."

A hearing on the motion for reconsideration and the motion for summary judgment was held on March 8, 1989. The District Court issued its opinion and order on April 12, 1989, finding that: 1) Iowa Mutual's motion for summary judgment should be granted; 2) Iowa Mutual need not amend its answer to affirmatively plead the defense of appraisal, as the appraisal requirements were mandatory under the contract and were already before the court; and 3) plaintiffs' motion to reconsider was denied. This appeal resulted.

Plaintiffs' first issue is based on the premise that Iowa Mutual did not invoke the appraisal procedure contained in the policy of insurance. This contention is plainly incorrect. Correspondence within the record clearly shows that Branch Claims Manager John Way, in a letter dated April 23, 1986, specifically notified Martin Dunn that the appraisal procedure was being invoked. Way again notified the Dunns in correspondence dated June 11, 1986. In it, Way inquired of the Dunns why neither he nor his designated appraiser had yet to contact the company. On June 29,

1986, Way once again notified the Dunns through his attorney that appraisal, and not arbitration, as the Dunns' counsel had termed it in correspondence, had been sought.

The appraisal provision in the policy issued to the Dunns reads in part:

> If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.

Iowa Mutual clearly and specifically asked for an appraisal. The Dunns did not comply. A policy provision regarding legal action against the company reads in part:

> No legal action may be brought against us until there has been full compliance with all terms of this policy.

The case at bar is on all fours with Garretson v. Mountain West Farm Bureau Mutual Insurance Co. (Mont. 1988), 761 P.2d 1288. The policy provisions in <u>Garretson</u> are virtually identical to those contained in the Dunns' policy. In <u>Garretson</u>, this Court determined that summary judgment was proper where an appraisal had been invoked but the insured did not comply before filing a complaint.

The Dunns maintain that Iowa Mutual failed to raise appraisal as an affirmative defense in their answer, and are therefore precluded from raising it later as a basis for summary judgment. Here, the appraisal provision was contained within the contract which is central to the dispute. An affirmative defense, under

6

Rule 8(c), M.R.Civ.P., concerns the pleading of matters not within the claimant's prima facie case. Sterret v. Milk River Production Credit Association (Mont. 1988), 764 P.2d 467. We agree with Iowa's contention that lack of appraisal constitutes a negative defense here, and, as such, was raised by Iowa's general denial in accordance with Rule 8(b), M.R.Civ.P.

Plaintiffs' second issue concerns whether a storage fee claim and an "interest loss" claim are material to the summary judgment.

The Dunns contend that Iowa is responsible, under the terms of the policy, for storage fees. Iowa denies this. A reading of the policy discloses no provision which mandates either party to pay storage fees. However, the Dunns did not seek payment of storage fees in their complaint. The District Court correctly disregarded this issue.

The Dunns also contend that they made a valid claim for interest, which is not subject to appraisal, and would thereby preclude summary judgment. However, the very nature of the Dunns' complaint precludes a right to interest. Section 27-1-211, MCA, allows recovery of interest if damages are certain or capable of being made certain. Had the Dunns properly followed the appraisal procedure, their damages would likely have been made certain. The trailer's value was not liquidated, and interest recovery is therefore not at issue. No interest may run until a fixed amount of damages has been arrived at by agreement, appraisal or judgment. Carriger v. Ballenger (Mont. 1981), 628 P.2d 1106.

Plaintiffs' third issue is whether personal property

valuations are in dispute, thereby precluding summary judgment.

The Dunns complaint asks for $2,800 to compensate for personal property lost in the accident. There is no question as to coverage. Iowa made an offer of $2,500 to the Dunns. While there is a difference of opinion as to worth, the Dunns have again failed to follow the procedures of the insurance contract. Agent Way requested the Dunns make an election in February, 1986, as to whether they wished to replace the destroyed items or seek reimbursement on the basis of depreciated cost. It is uncontroverted that the Dunns did not provide replacement receipts as requested or make an election. Because the Dunns did not comply with the policy procedures, their claim of a dispute as to the value of personal property has no more merit than that involving the trailer. The District Court correctly determined that the personal property valuations were not material to a breach of contract claim.

Plaintiffs' final issue is whether the District Court erred in staying their bad faith claim.

The District Court originally entered an order staying proceedings and protecting defendants from discovery in matters directed to the Dunns' bad faith claim until resolution of the claim for breach of contract. The court declined to modify the order upon subsequent motion for reconsideration. We agree with the court's logic.

The District Court stated:

> The court declines to modify the Order Staying Proceeding and Protecting the Defendants from further Discovery

previously entered . . .. The likelihood of prejudice to Defendants by proceeding with the bad faith claim before the appraisal process is complete is probable. The conclusion that the appraisal procedure must be followed and the resolution of the value issue may well affect the resolution of the bad faith issues.

The District Court was acting within the bounds of discretion authorized by Rule 42(b), M.R.Civ.P.

Affirmed.

_____
                    Justice

We Concur:

_____
        Chief Justice

_____

_____
        Justices