No.   89-569

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

NORTHERN MONTANA HOSPITAL, a
Montana nonprofit corporation,

        Plaintiff, Respondent,
        and Cross-Appellant

   v.

KENNETH KNIGHT, a sole proprietor,
d/b/a KNIGHT & COMPANY,

        Plaintiff, Appellant,
        and Cross-Respondent

**FILED**

MAY 21 1991

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Twelfth Judicial District,
                In and for the County of Hill,
                The Honorable John Warner, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                Tracy A. Axelberg argued, Jack L. Lewis; Jardine,
                Stephenson, Blewett & Weaver, Great Falls, Montana

        For Respondent:

                Ronald F. Waterman argued; Gough, Shanahan,
                Johnson & Waterman, Helena Montana
                Patrick A. Sullivan; Winston & Cashatt,
                Spokane, Washington

        For Amici Curiae:   (American Institute of Architects and
            Montana Chapter/American Institute of Architects)

            Charles I. Hadden argued, Sean M. Hanifin; Ross,
            Dixon & Masback, Washington, D.C.
            Sherman V. Lohn, William Evan Jones; Garlington,
            Lohn & Robinson, Missoula, Montana

Submitted: May 9, 1991

Decided:   May 21, 1991

Filed:

                          Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Defendant Kenneth Knight (Architect) appeals from a jury verdict rendered against him and in favor of plaintiff Northern Montana Hospital in the Twelfth Judicial District Court, Hill County. The Hospital cross-appeals from the District Court's denial of its motion for prejudgment interest. We affirm.

The Architect raises the following issues:

1. Were the Hospital's claims barred by the statute of limitations?

2. Was expert testimony on the custom of the architectural profession properly admitted into evidence?

3. Was the Architect's motion to compel production of documents reviewed by the Hospital's expert witness in preparation for his deposition properly denied by the District Court?

The sole issue raised by the Hospital on cross-appeal is whether the District Court properly denied its motion for prejudgment interest.

In 1968, the Hospital's board of directors engaged the Architect and his firm to provide architectural services for the construction of a hospital in Havre. Construction commenced in 1973 and the building was substantially completed by mid-June 1975.

Shortly after completion, several problems arose, most centering around the structure's heating, ventilating, and air-conditioning systems. Temperatures fluctuated tremendously

2

throughout the building. Air-conditioning equipment on the roof transmitted noise and vibrations to the rooms below. Drafts and boiler room fumes permeated the facility. Gases from the incinerator were sucked into the nursery. The elevator doors constantly whistled as wind rushed through the elevator shafts.

The Hospital administration sought assistance from the Architect in its attempts to remedy the problems. The Architect assured the Hospital that the problems were not the result of design deficiencies but were caused by either the Hospital maintenance staff or the contractor.

In 1979, the Hospital employed the RMH Group, a Denver-based consulting firm, to conduct an energy audit and systems review. The RMH report, which the Hospital received in 1980, concluded that the various atmospheric problems were the result of building code violations and design defects. RMH suggested a major redesign and reconstruction of the system. The Hospital retained the consultant to correct the problems.

On July 2, 1981, the Hospital filed suit against the Architect, alleging that he had breached and negligently breached his express and implied contractual duties; breached the contract's implied warranty of fitness of the design; breached his implied duty to supervise the project's construction; negligently designed the building; negligently supervised the facility's construction; and fraudulently concealed known or suspected design deficiencies, preventing the Hospital from discovering the cause of those problems.

3

In March 1989 the Architect moved for summary judgment, arguing that the claims were barred by the statute of limitations. The District Court denied the motion, ruling that the action constituted architectural malpractice and was governed by the three-year limitations period for general tort actions. The court found that, although the Hospital was put on inquiry notice more than three years before it filed the lawsuit, the action was not time barred because the Hospital made reasonable inquiry of the Architect and the Architect kept it from knowing the magnitude of the problems by assuring it that the systems were fine. The court therefore concluded that the Architect was equitably estopped from relying on the statute of limitations defense.

Trial proceeded on the merits on May 22, 1989. After the close of the Hospital's case-in-chief, the Architect moved for a directed verdict, arguing that the Hospital had not presented sufficient evidence to support the breach of contract and warranty claims. He also raised the timeliness issue once again. The court denied the Architect's statute of limitations defense, reserved ruling on the contract claim, and granted the Architect a directed verdict on the warranty issue.

At the close of the evidence, the Architect again moved for a directed verdict on the statute of limitations defense and the breach of contract claim. The court denied the motion on the timeliness issue but this time dismissed the contract claim. The court also refused to allow the fraud claim to go to the jury.

The negligent design and negligent breach of contract claims were submitted to the jury. The jury found that the Architect had not negligently designed the facility but that he had negligently breached the contract. It awarded the Hospital $1,750,000 in damages.

Post trial, the Architect moved for judgment notwithstanding the verdict, raising the timeliness issue for the fourth time. The Hospital moved for prejudgment interest. Both motions were denied. The Architect appeals and the Hospital cross-appeals.

## I.

Were the Hospital's claims barred by the statute of limitations?

When determining which statute of limitations applies to a cause of action, this Court looks to the gravamen of the action rather than relying on the label given to the claim by the plaintiff. Erickson v. Croft, 233 Mont. 146, 153, 760 P.2d 706, 710 (1988). If the essence of the action is tortious, the tort statute of limitations applies. Similarly, if the essence of the action is contractual, the contract statute of limitations applies. Quitmeyer v. Theroux, 144 Mont. 302, 311, 395 P.2d 965, 969 (1964).

In a case that concerns the breach of a professional service contract, it is oftentimes difficult to determine whether the claims are strictly tortious or strictly contractual. The rule in such circumstances is that if the claims are based upon breach of specific provisions in the contract, the action sounds in contract

5

and the contract statute of limitations applies. If, however, the claims are based on a breach of a legal duty imposed by law that arises out of the performance of the contract, the action sounds in tort and the tort statute of limitations applies. Billings Clinic v. Peat Marwick Main & Co., 797 P.2d 899, 908, 47 St.Rep. 1464, 1473-74 (Mont. 1990).

In the present case, the Hospital based its claims against the Architect on several theories, including breach of express and implied contractual terms, breach of warranty, negligent breach of contract, negligent design, and fraudulent concealment. The District Court directed a verdict against the Hospital on the breach of contract, breach of warranty, and fraudulent concealment allegations. Consequently, the court instructed the jury exclusively on negligent theories of law and the jury considered only the negligent design and negligent breach of contract claims, claims which were, in essence, grounded in the tort of architectural malpractice. Because no specific statute of limitations governed architectural malpractice, the general three-year tort statute of limitations found in § 27-2-204(1), MCA, controlled the action.

The statute of limitations begins to run when a cause of action accrues. The term accrual was not defined in Montana by statute until 1987. Act of April 9, 1987, ch. 441, § 1, 1987 Mont. Laws 977. Therefore, at the time the acts complained of in this case occurred and at the time the lawsuit was filed, accrual was defined by common law.

6

Generally, at common law, a cause of action grounded in negligence accrues when the negligent act or omission occurs, if the plaintiff is immediately and directly injured by the act or omission. If the plaintiff's injury is consequential, rather than direct, the action accrues when the injury is sustained. Heckaman v. Northern Pac. Ry. Co., 93 Mont. 363, 375-76, 20 P.2d 258, 261 (1933). In suits alleging architectural malpractice, the action accrues either when the design is submitted to and accepted by the owner or upon substantial completion of the building. See generally Annot., 90 A.L.R.3d 507, 513-21 (1979).

In order to alleviate the harshness sometimes worked by a strict application of the statute of limitations, courts have devised exceptions to the general rules. Thus, this Court has applied the discovery rule to latent injuries, holding that the limitations period does not commence until the plaintiff discovers the injury. Johnson v. St. Patrick's Hospital, 148 Mont. 125, 417 P.2d 469 (1966). Other courts have utilized the continuing relationship doctrine in cases involving professional malpractice. Schoenrock v. Tappe, 419 N.W.2d 197 (S.D. 1988) (legal malpractice); Sharsmith v. Hill, 764 P.2d 667 (Wyo. 1988) (medical malpractice); Lincoln Grain, Inc. v. Coopers & Lybrand, 338 N.W.2d 594 (Neb. 1983) (accountant malpractice); Greene v. Greene, 451 N.Y.S.2d 46 (N.Y. 1982) (legal malpractice); Borgia v. City of New York, 187 N.E.2d 777 (N.Y. 1962) (medical malpractice).

7

The continuing relationship doctrine may be used when, during the course of an ongoing relationship between a professional and his client, the professional commits a tortious act that injures the client. The relationship must not be intermittent or sporadic. Instead, there must be "clear indicia of an ongoing, continuous, developing, and dependent relationship between [the parties]." Schoenrock, 419 N.W.2d at 201.

The doctrine suspends the accrual of the cause of action in order to give the professional an "opportunity to remedy, avoid or establish that there was no error or attempt to mitigate damages." Pittman v. McDowell, Rice & Smith, Chartered, 752 P.2d 711, 716 (Kan. Ct. App. 1988) (quoting Mallen and Levit, Legal Malpractice § 391, at 460-61 (2d ed. 1981)). Thus, the cause of action does not accrue until either the professional relationship ends or, if a general professional relationship continues between the parties, the professional ceases to treat or advise the client for the particular act causing the injury. The continuing treatment must relate to the same or a related injury that caused the initial problem. The mere continuity of a general professional relationship after cessation of treatment for or advice on the injury caused by the negligent act will not prevent the statute from running. Schoenrock, 419 N.W.2d at 201.

The New York courts have extended the continuing relationship doctrine to the area of architectural malpractice. County of Broome v. Vincent J. Smith, Inc., 358 N.Y.S.2d 998 (N.Y. Sup. Ct.

8

1974); Board of Educ. v. Thompson Constr. Corp., 488 N.Y.S.2d 880 (N.Y. App. Div. 1985); Greater Johnstown City School Dist. v. Cataldo & Waters, Architects, P.C., 551 N.Y.S.2d 1003 (N.Y. App. Div. 1990).

In County of Broome, an architect contracted to design a library for the plaintiff. Shortly after construction was completed, the roof began to leak. The architect thereafter negotiated with the contractors, who made attempts to remedy the situation. During this time, the architect communicated regularly with the plaintiff, assuring it that "the resulting roof will equal the original plans and specifications." Three years later, the plaintiff filed suit. The architect claimed that the statute of limitations had run. The court rejected the argument, ruling that the continuing treatment by the architect after the completion of the library had lulled the plaintiff into an unfounded assurance that the problem would be corrected. Under these circumstances, the statute of limitations did not begin to run until the professional relationship terminated.

The court in County of Broome noted that, in a malpractice case, the professional renders advice or services of a highly technical or specialized nature, outside of the knowledge of the client. The client has the right to place his confidence and trust in the professional and depend on the professional's advice if problems arise during the course of the relationship. The client should not be forced to unnecessarily disrupt the relationship by

9

having to consult with a different member of the profession to ensure that he is receiving competent advice or services. County of Broome, 358 N.Y.S.2d at 1001-03.

The continuing relationship doctrine prevents the professional from assuring the client, whether fraudulently or in good faith, that defects can be fixed or that another party is responsible while the statute of limitations runs. The professional should not be able to take advantage of the client's justifiable reliance by claiming that the statute of limitations bars the cause of action when the limitations period has expired because of the professional's repeated assurances that the deficiencies could be repaired. County of Broome, 358 N.Y.S.2d at 1001-03.

The facts of the present case fit squarely with those giving rise to the use of the continuing relationship theory. Here, the Architect was hired to design and oversee the building of the facility. Shortly after completion, problems with the heating, air conditioning, and ventilating systems manifested themselves. The Hospital contacted the Architect, who in turn either worked with the contractor to resolve the deficiencies or blamed the defects on the Hospital's maintenance staff and suggested different ways to operate the systems. Both the Hospital administrator and the Architect himself testified that, until sometime in 1979, the Hospital continued to seek and rely upon advice from the Architect in an attempt to repair the defects.

As applied to this case, the continuing relationship doctrine relieves the harshness rendered by a strict application of the limitations period. We therefore adopt the continuing relationship doctrine in this case, where no specific statute of limitations governs the tort of architectural malpractice and where, at the time of the acts giving rise to the action and the time of the filing of the lawsuit, no statute defined the term accrual. We note that our adoption of the doctrine here does not overrule our earlier decision in Schneider v. Leaphart, 228 Mont. 483, 488, 743 P.2d 613, 617 (1987), where we declined to apply the continuing relationship rule. Schneider concerned a legal malpractice action that was controlled by a specific statute of limitations incorporating the discovery rule but not the continuing relationship rule. As we recognized above, the present action is governed only by the general tort statute of limitations, which does not include either the discovery or the continuing relationship rule within its text.

In conclusion, this lawsuit was not barred by the statute of limitations. Under the continuing relationship theory, the statute of limitations, which would normally have started to run upon substantial completion of the structure in 1975, was suspended until the Hospital's relationship with the Architect ended in 1979. The Hospital filed the complaint in 1981, well within the three-year limitations period.

11

# II.

Was expert testimony on the custom of the architectural profession properly admitted into evidence?

At trial, the Hospital's expert testified that, by the custom and practice of the architectural profession, the Architect undertook an obligation to ascertain that materials and equipment were furnished and installed in accordance with the facility's design. He also testified that the Architect violated his duty to provide a good and safe building adequate to perform the tasks of a hospital. The Architect argues that this testimony was improperly admitted.

When confronted with a similar argument, the Eighth Circuit Court of Appeals held:

> [A]n architect whose contractual duties include supervision of a construction project has the duty to supervise the project with reasonable diligence and care. An architect is not a guarantor or an insurer but as a member of a learned and skilled profession he is under the duty to exercise the ordinary, reasonable technical skill, ability and competence that is required of an architect in a similar situation; and if by reason of a failure to use due care under the circumstances, a foreseeable injury results, liability accrues. Whether the required standard of care was exercised presents a jury question.

Aetna Ins. Co. v. Hellmuth, Obata & Kassabaum, Inc., 392 F.2d 472, 476-77 (8th Cir. 1968).

We agree with the Eighth Circuit and hold that, in this case, expert testimony on the custom of the architectural profession constituted rebuttable proof aimed at assisting the trier of fact to determine whether the Architect negligently performed the

12

contract. The testimony aided the jury in establishing whether the Architect fulfilled the contract with care, skill, reasonable expediency, and faithfulness according to the standards of his profession.

The Architect was obligated under the contract to supervise construction of the building, utilizing the ordinary care exercised by members of his profession. The jury was so instructed. The expert did not testify that an architect is an insurer against defects in a project. The trial court did not err in allowing the Hospital's expert to testify on the standard of the industry.

### III.

Was the Architect's motion to compel production of documents reviewed by the Hospital's expert witness in preparation for his deposition properly denied by the District Court?

The Architect cites Rule 612, M.R.Evid., to support his contention that, because one of the Hospital's experts took to his deposition a file containing documents he had reviewed to prepare for the deposition, the entire file should be made available as a deposition exhibit and as subject matter for cross-examination. Rule 612, M.R.Evid., provides:

> If a witness uses a writing to refresh his memory for the purpose of testifying, either
>
> (1) while testifying, or
>
> (2) <u>before testifying, if the court in its discretion determines it is necessary in the interests of justice</u>, an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce into evidence those

13

portions which relate to the testimony of the witness. _If it is claimed that the writing contains matters not related to the subject matter of the testimony the court shall examine the writing in camera, excise any portions not so related_, and order delivery of the remainder to the party entitled thereto. Any portion withheld over objection shall be preserved and made available to the appellate court in the event of an appeal. (Emphasis added.)

The documents the Architect sought to compel were reviewed by the trial court in camera following the Hospital's claim that two letters in the file were not related to the subject matter of the expert's testimony and were in any case protected by the attorney-client privilege. The court, in compliance with Rule 612, M.R.Evid., concluded that the letters were protected as attorney work product and, furthermore, that they were of little relevance to the expert's testimony and would not lead to further discovery. The District Court did not abuse its discretion in so ruling.

## IV.

Did the District Court properly deny the Hospital's motion for prejudgment interest?

When the amount of recovery is certain or capable of being made certain by calculation, a plaintiff shall recover prejudgment interest. Section 27-1-211, MCA, provides:

Every person who is entitled to recover damages certain or capable of being made certain by calculation and the right to recover which is vested in him upon a particular day is entitled also to recover interest thereon from that day except during such time as the debtor is prevented by law or by the act of the creditor from paying the debt.

This Court has established three criteria that must be met to be eligible for prejudgment interest under this statute. There

14

must be an underlying monetary obligation; the amount of recovery must be certain or capable of being made certain by calculation; and the right to recover the obligation must vest on a particular day. Byrne v. Terry, 228 Mont. 387, 390, 741 P.2d 1341, 1343 (1987).

Prejudgment interest is inappropriate when the amount of a party's damages is uncertain or disputed. In Carriger v. Ballenger, 192 Mont. 479, 628 P.2d 1106 (1981), the builder failed to complete construction of the plaintiff's home in a timely manner. Plaintiff sought interest from the date of injury. We rejected the request with the following language:

> [T]he amount of the damages due upon breach was not clearly ascertainable until determined by the trial court. This Court has interpreted the statute to mean that <u>no interest can run until a fixed amount of damages has been arrived at, either by agreement, appraisal, or judgment</u>. (Emphasis added.)

Carriger, 192 Mont. at 486, 628 P.2d at 1110.

In this case, much evidence was presented at trial concerning the Hospital's damages. The jury returned a verdict of $1,750,000. This amount did not coincide with any amount set out as damages by the Hospital. Clearly, the right to recover interest vested only on the date of the jury verdict and not on an earlier particular date. The trial court did not err in refusing to award the Hospital prejudgment interest.

Affirmed.

_____
Justice

15

We Concur:

_____
　　　　　Chief Justice

_____

_____

_____

_____
　　　　　Justices

_____
Hon. Douglas G. Harkin,
District Judge, sitting in
place of Justice Fred J. Weber

16