FILED

12/28/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0805

DA 15-0805

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 350

RYFFEL FAMILY PARTNERSHIP LTD.,

      Plaintiff and Appellant,

  v.

ALPINE COUNTRY CONSTRUCTION, INC.,

      Defendant, Appellee,
      and Cross-Appellant,

APLINE COUNTRY CONSTRUCTION, INC.,

      Counter-Claimant, Appellee,
      and Cross-Appellant,

  v.

RYFFEL FAMILY PARTNERSHIP LTD.,

      Counter-Defendant
      and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                 In and For the County of Gallatin, Cause No. DV 08-372C
                 Honorable John C. Brown, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Rhett B. Nemelka, Nemelka Law, P.C., Bozeman, Montana

      For Appellee:

          Jesse Beaudette, Nathan A. Fluter, Bohyer, Erickson, Beaudette & Tranel,
          PC, Missoula, Montana

Submitted on Briefs:  September 28, 2016

Decided:  December 28, 2016

Filed:

_____
                    Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1     Plaintiff and Appellant Ryffel Family Partnership, Ltd. (Ryffel Partnership) appeals from a jury verdict entered in the Eighteenth Judicial District Court, Gallatin County. The jury found that Ryffel Partnership had breached two oral contracts with the Appellee Alpine Construction (Alpine), but awarded zero damages. The first agreement was entered into in January of 2007 and the second agreement was entered into in September of 2007. Although awarding zero damages for Ryffel Partnership's breach, the jury found Ryffel Partnership was unjustly enriched by Alpine's labor and awarded Alpine $50,348.18 in damages. Finally, the jury awarded $25,000 to Alpine for Ryffel Partnership's breach of the covenant of good faith and fair dealing.

¶2     The District Court issued an order pursuant to M. R. Civ. P. 59, amending the judgment to assign the jury's damages award for unjust enrichment to its finding that Ryffel Partnership breached its contract. The District Court did so upon the basis that breach of contract and unjust enrichment are inconsistent legal theories of recovery. The District Court's order also struck the jury's award of $25,000 for breach of the covenant of good faith and fair dealing, concluding no evidence in the record supported the award. Alpine filed a motion to amend the judgment for pre-judgment interest pursuant to § 27-1-211, MCA, which the District Court denied by allowing the motion to expire. In its appeal, Ryffel Partnership seeks a new trial, alleging the jury's verdict was inconsistent and that there was not substantial evidence to support breach of the second agreement entered into in September of 2007. Ryffel Partnership does not raise any issue regarding the first agreement entered into in January of 2007, which the jury found it had

3

also breached. Alpine cross-appeals the District Court's denial of pre-judgment interest. We affirm the District Court's ruling, including its denial of pre-judgment interest, and deny Ryffel Partnership's appeal to review the verdict for lack of substantial evidence. We restate the issues on appeal as follows:

> *1. Whether the jury's verdict regarding the parties' second agreement was supported by substantial evidence.*
>
> *2. Whether the District Court erred in denying Ryffel Partnership's motion for a new trial based on an inconsistent or illegal jury verdict.*
>
> *3. Whether the District Court erred in denying Alpine's motion for pre-judgment interest pursuant to § 27-1-211, MCA.*

### FACTUAL AND PROCEDURAL BACKGROUND

¶3 Although James Ryffel (Ryffel) was born in Bozeman, Montana, Ryffel Partnership is a Texas-based partnership consisting of Ryffel, his wife, and a family trust as partners. Ryffel often travels to Montana and purchased the property at issue because of its scenic nature and beauty, along with its suitability as a location for a family home. Part of the property's appeal to Ryffel and his wife were the statuesque "specimen trees" and the "hilly knoll" upon which many of these trees were located.

¶4 Ryffel and his wife wanted to build a home on the property that would, among other things, look upon the beauty of the knoll and its trees. To implement that vision, Ryffel hired Steve Hanson (Hanson) as a general contractor to oversee the building and logging work the project would require. Hanson is an experienced builder of custom log homes. Ryffel's testimony reflects that, overall, he wanted to cut only the trees necessary to build a road on the property to the home, the trees to build the home itself, thin those

4

trees that then remained on the property, clear those trees that were dead and fallen, and then preserve specimen trees greater than 24 inches in diameter. To those ends, some trees were specially marked for use as house logs in the upcoming construction of the Ryffel Partnership residence on the property.

¶5 Bob Kammers (Kammers) is one of the owners of Alpine Construction. Seeking the potentially substantial logging business on the Ryffel Partnership property, Kammers met Hanson through a mutual acquaintance, Scott Cooper (Cooper). Cooper, Kammers, and Hanson all gathered on the Ryffel Partnership property in January of 2007, and discussed the job. Hanson hired Alpine for logging work on the property: logs were to be delivered to the upper landing where the house would be built, and the thinning would have to be done within parameters, i.e. no specimen trees greater than 24 inches would be cut. Hanson hired Alpine in January of 2007. He showed Kammers where the house logs were and where they should be placed for use in construction.

¶6 Although Hanson could not remember if Kammers gave him a rate sheet for the work, Cooper and Kammers both testified that the terms of the agreement were for Alpine to be paid by the hour. Kammers believed that an hourly rate was the only acceptable payment method under the circumstances because all of the "good logs" were to be used for the Ryffel Partnership house construction, while all of the "butts, tips, and crooked logs" were to go to the mill. However, Kammers contended that it was impossible for him to determine beforehand what should stay on the property, and what should go to the mill, making it difficult to estimate the labor on a lump sum basis. Kammers testified that payments from what he took to the mill were to be offset against

5

Alpine's costs, and that Alpine would charge a flat fee for delivering each load to the mill. Kammers also testified that Hanson never mentioned the specimen tree restrictions.

¶7 Hanson explained that Alpine performed side jobs as well. According to Hanson, Alpine hauled materials and equipment, and cleared snow and ice from the property's road to ensure timely deliveries of material and the safe traversal of workers constructing the house. Alpine also cleared trees along the road, and hauled logs that would later serve as trusses for the home. Alpine's work on the road was frequent, as the road was cleared of materials every time someone needed to travel upon it—at least once or twice per day. Alpine also backfilled around the house's foundation.

¶8 Alpine sent an invoice dated February 4, 2007, to Ryffel and Hanson for road work. The invoice billed an hourly rate, which Ryffel and Hanson testified was acceptable, because the road work was considered "side work." Alpine sent another invoice for hourly work on March 1, 2007, for building a de-barker. Ryffel testified that this too was considered side work. Ryffel stated that he received several such invoices, dated between May and September, 2007, for hourly labor and equipment.

¶9 Ryffel questioned the fairness of one of those invoices for $97,000 and so asked Kammers to meet to discuss it. This meeting would form the basis of the parties' second agreement. At that meeting in September 2007, Kammers and Ryffel discussed the invoices accrued so far, and attempted to concur on the terms of their agreement going forward. Ryffel was concerned in part, because there was no set agreement between Ryffel Partnership and Alpine concerning a rate for the logging work. Hanson was convinced that Alpine was not to be paid an hourly rate for logging, a fact supported by

6

Ryffel Partnership's expert witness who believed that an hourly rate for logging is unusual in the industry. Ostensibly, under the terms of this second agreement and according to Kammers, Alpine would now log trees on the ground, haul them to the mill, deduct the cost of hauling them from the money received at the mill, and then evenly split the remaining proceeds with Ryffel Partnership. Kammers' testimony indicated that Ryffel Partnership's share of the proceeds was to be applied first to any outstanding balance owed to Alpine. Kammers also agreed Alpine would no longer bill by the hour.

¶10 Ryffel's memory of that meeting and the terms of the resulting agreement differed from Kammers'. In Ryffel's recollection, he had only agreed to compensate Alpine with a share of the logging proceeds, not an hourly rate. Additionally, he understood that Kammers had encountered difficulty removing felled trees from a steep area and so needed to purchase a line machine. Ryffel testified that he agreed at that meeting to pay $45,000 for a line machine which Kammers would then use to haul logs from the base of the knoll for transportation to the mill. Ryffel's understanding was that Kammers would then transport the logs to the mill, and proceeds therefrom would be evenly split. This meeting and agreement, in Ryffel's view, nullified any past agreements the parties may have had and that going forward no more trees would be cut on the property at all, including "specimen trees" on the knoll.

¶11 Ryffel sent Alpine the check for $45,000, along with a letter that attempted to memorialize the terms of the agreement reached in the September meeting with Kammers. The letter, never signed by Kammers, stated that "[t]his agreement will replace any previous agreements or invoices." However, the letter was cursory for a

7

document purporting to replace a timber harvesting agreement and a series of past invoices. The only definite term the letter addressed was that 50% of any log sale was to be forwarded to Ryffel's office, and even that term was hobbled by a vague description of what logs were to be included as part of the deal. Although the letter confirmed that the check for $45,000 was enclosed, it did not specify any use for the funds—no line machine was mentioned. The letter presented no other terms or significant details and was in fact only six sentences long, including the sentence about enclosing the check.

¶12    Kammers' testimony differed from Ryffel's recollection as to these facts regarding their second agreement. Kammers' testimony indicated he never told Ryffel he needed a line machine and he never asked Ryffel for $45,000 to purchase the line machine—Ryffel offered it. Furthermore, Kammers testified that he did not use the check to purchase a line machine because he had already purchased one prior to the meeting with Ryffel; the meeting did not eliminate any prior invoices due because Ryffel Partnership's balance due at the time was substantial; and hauling charges were not to come out of Alpine's share of the logging proceeds. Thus, according to Kammers, the letter Ryffel sent did not accurately reflect at all the agreement reached at the meeting.

¶13    Despite the ambiguities, vagaries, and misunderstandings arising out of these oral agreements, Alpine sent invoices and Ryffel Partnership sent payments. Alpine's bookkeeper, Kammers' wife Shirley Kammers (Shirley), testified at trial to invoices that were paid and invoices that were left unpaid. She testified that some invoices were paid in full: an invoice for $6,464.32 and one for $19,746. Also, some payments from the logging proceeds were applied to Ryffel Partnership's outstanding running balance:  a

8

payment for $6,292.48 and one for $10,005.18. Ryffel Partnership's account was similarly credited $27,250 when Alpine needed to purchase equipment from Ryffel Partnership. Additionally, Alpine applied the check for $45,000 to a series of invoices with outstanding balances, thereby reducing the total amount Ryffel Partnership owed to $90,902.20.

¶14    This pattern of work, invoices, credits, and fluctuating balances continued through the end of September 2007, without any written agreement between the parties, and in spite of Shirley's and Kammers' failed attempts to contact Ryffel via telephone to discuss his letter. Additionally, the record is devoid of written attempts by Alpine to discuss the letter: Alpine sent no emails, letters by post, or faxes to clarify or repudiate Ryffel's letter. Nevertheless, Alpine continued to log and clear the land, generate invoices, assess Ryffel Partnership the hauling costs, deduct hauling costs from the logging proceeds, and apply Ryffel Partnership's share of those proceeds toward invoices which remained outstanding. In the end, Shirley's testimony reflected that, after she had applied all of the logging credits, Ryffel Partnership's account still had a balance due of $49,281.12, which Ryffel Partnership never paid. After Alpine applied finance charges through April of 2008, the amount totaled $50,348.18. In contrast, by calculation of Ryffel Partnership's expert, Alpine owed Ryffel Partnership $41,105.88 from the sale of the logs.

¶15    The misunderstandings and nebulous terms of these oral agreements culminated in the instant suit when Ryffel and his family visited the property in December of 2007, for Christmas. Ryffel was appalled to see that the specimen trees on the knoll, which in his remembrance had been specifically protected, were now gone from the property. Hanson

9

testified that he had not authorized Kammers to cut them, but Kammers did not think he needed Hanson's authorization to do so. Kammers also believed that the logging plan had changed under the oral agreement in September, which Ryffel's letter had attempted to memorialize. Kammers' memory at trial was that the line machine's whole purpose was to remove trees from the steep downslope of the knoll, and that regardless, many of those specimen trees had already been removed prior to the September meeting with Ryffel. Whatever the reason for it, Kammers admitted he was the one who had removed them.

¶16 In the trial that followed, the jury was instructed to find whether either of the parties had breached either of two oral contracts between Alpine and Ryffel Partnership, through its representative officer, Ryffel—one agreement arising from the initial meeting of Kammers, Hanson, and Ryffel in January of 2007; and one from the meeting in September of 2007 between Kammers and Ryffel. The jury was also tasked with deciding whether either party had been unjustly enriched, and to what extent, if any, the parties had suffered damages from either a breach of contract or unjust enrichment. The jury found in favor of Alpine—that Ryffel Partnership had breached both its January and September, 2007 oral contracts, but that Alpine should be awarded no damages for either breach. However, the jury also found that Ryffel Partnership had been unjustly enriched by accepting work done by Alpine on its property, for which it did not provide compensation. For that unjust enrichment, the jury awarded $50,348.18, the same sum reflected in Alpine's books after finance charges were added, as of April 2008. Last, the

jury found that Ryffel Partnership had breached the implied covenant of good faith and fair dealing, for which the jury awarded $25,000 in damages.

¶17 After the jury rendered its verdict, Alpine filed a motion under M. R. Civ. P. 59 and 60 to amend the judgment to include pre-judgment interest, upon which the trial court did not act, and so was deemed denied. On October 8, 2015, Ryffel Partnership filed its own Rule 59 Motion for new trial, or alternatively, amendment of the judgment. Ryffel Partnership contended that the jury's award of damages for unjust enrichment, coupled with a finding that both oral contracts were breached, constituted manifest legal error, since breach of contract and unjust enrichment are mutually exclusive theories of recovery. The District Court, acknowledging that breach of contract and unjust enrichment are incongruous findings in the same judgment, denied Ryffel Partnership's request for a new trial or elimination of the award, but amended the jury's verdict by assigning the $50,348.18 in damages awarded for unjust enrichment to the finding for breach of contract. The court also vacated the jury's award of $25,000 for breach of the implied covenant of good faith and fair dealing, as it would have been an impermissible double recovery for Alpine and unsupported by any evidence of additional damages suffered.

¶18 Ryffel Partnership appeals, alleging that the District Court erred by denying the motion for a new trial and that the jury's verdict regarding the parties' second agreement was not supported by substantial evidence. Alpine asks this Court to affirm the District Court's denial of a new trial and cross-appeals, alleging that the trial court erred by

11

denying Alpine's motion after trial for pre-judgment interest pursuant to § 27-1-211, MCA.

## STANDARDS OF REVIEW

¶19 This Court reviews a district court's order to grant or deny a new trial for manifest abuse of discretion. *Armstrong v. Gondeiro*, 2000 MT 326, ¶ 17, 303 Mont. 37, 41, 15 P.3d 386, 389. To overturn the ruling of the lower court, the abuse of discretion must materially affect the substantial rights of the complaining party. *Lopez v. Josephson*, 2001 MT 133, ¶ 16, 305 Mont. 446, 449, 30 P.3d 326, 329.

¶20 A district court's denial of a motion to amend pursuant to M. R. Civ. P. 59 is reviewed for an abuse of discretion. *Lee v. USAA Cas. Ins. Co.*, 2001 MT 59, ¶ 27, 304 Mont. 356, 362, 22 P.3d 631, 636. "The test for abuse of discretion is whether the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice." *Lee*, ¶ 27 (citation omitted).

¶21 A denial of prejudgment interest is a question of law, which we review to determine if the district court's interpretation is correct. *Ramsey v. Yellowstone Neurosurgical Assocs., P.C.*, 2005 MT 317, ¶ 18, 329 Mont. 489, 125 P.3d 1091.

## DISCUSSION

¶22 *1. Whether the jury's verdict regarding the parties' second agreement was supported by substantial evidence.*

¶23 Ryffel Partnership filed a Motion for New Trial or Amendment of Judgment, arguing that there was insufficient evidence to justify the jury's damages award of $25,000 for Ryffel Partnership's breach of the implied covenant of good faith and fair

dealing. The trial court found that this argument had merit because the award would be an impermissible double recovery for Alpine and, accordingly, granted Ryffel Partnership's request that the award be vacated. However, Ryffel Partnership never asserted that there was not substantial evidence supporting the jury's determination that Ryffel Partnership breached the second agreement, nor did it argue waiver or accord and satisfaction as defenses.

¶24 We have cautioned litigants that this Court strongly recommends that challenges to a verdict's lack of evidence be first brought before the district court via post-trial motions, before reaching us on appeal. *D.R. Four Beat Alliance, LLC v. Sierra Prod. Co.*, 2009 MT 319, ¶ 46, 352 Mont. 435, 218 P.3d 827. This is a long-standing policy, which some jurisdictions require as a prerequisite to appeal. *Four Beat*, ¶ 46 (citing *Napier v. Jacobs*, 429 Mich. 222, 414 N.W.2d 862, 864-65 (Mich. 1987); *Cecil v. Smith*, 804 S.W.2d 509, 510-11 (Tex. 1991); *Great Atlantic and Pacific Tea Co., Inc. v. Sealy*, 374 So.2d 877, 880-81 (Ala. 1979); *McAdams, Inc. v. Doggett Leasing Co., Inc.*, 681 S.W.2d 406, 407 (Ark. App. Div. 1 1984). Although this policy is not a requirement in Montana, such post-trial motions "'serve as an appropriate first step for contesting an unfavorable verdict and . . . it would be best to afford the trial court that opportunity to reevaluate its rulings.'" *Four Beat*, ¶ 46 (quoting *Stauffer Chemical Co. v. Curry*, 778 P.2d 1083, 1103-04 (Wyo. 1989). As a result, this Court generally will not address an issue or new legal theory raised for the first time on appeal. *Becker v. Rosebud Operating Servs.*, 2008 MT 285, ¶ 17, 345 Mont. 368, 191 P.3d 435 (additional

citation omitted). We will not unfairly fault a trial court for failing to rule correctly on an issue that it was not asked to consider. *Becker*, ¶ 17.

¶25 We observe also that although Ryffel Partnership did raise a sufficiency of the evidence argument regarding the jury's damages award for breach of the covenant of good faith and fair dealing in its Rule 59 motion, it never argued to the District Court that there was insufficient evidence to support the jury's determination that there was a breach of the second agreement. We cannot conceive of how the issue framed to the trial court below—a lack of substantial evidence to support a finding of a breach of good faith and fair dealing—could be considered as a challenge to the sufficiency of the evidence to support the jury's verdict that the second agreement was breached by Ryffel Partnership. Nonetheless, § 25-11-102 (6), MCA, "does invest this Court with the ability to review . . . challenge[s] to the jury's verdict on the basis of insufficiency of the evidence." *Four Beat*, ¶ 44. This statute reads in pertinent part:

> 25-11-102. Grounds for new trial.
>
> The former verdict or other decision may be vacated and a new trial granted on the application of the party aggrieved for any of the following causes materially affecting the substantial rights of such party:
> . . .
> (6) insufficiency of the evidence to justify the verdict or other decision or that it is against law[.]

¶26 There was sufficient evidence presented for the jury to find Ryffel Partnership breached the second agreement. An oral contract is enforceable if the four elements of a contractual agreement are met: (1 ) identifiable parties capable of contracting; (2) consent of those parties; (3) a lawful object; and (4) sufficient consideration. Section 28-2-102,

14

MCA; *Keil v. Glacier Park, Inc.*, 188 Mont. 455, 460, 614 P.2d 502, 505 (1980). In making this determination, we must view the evidence in the light most favorable to the prevailing party. *Lee v. Kane*, 270 Mont. 505, 511, 893 P.2d 854, 857 (1995). The prevailing party is entitled to any reasonable inference that can be drawn from the facts. *Sandman v. Farmers Ins. Exc.*, 1998 MT 286, ¶ 41, 291 Mont. 456, 969 P.2d 277.

¶27 Ryffel and Alpine are identifiable parties capable of contracting and testified that they reached an agreement when they met in September 2007. Further, logging and other construction work is a lawful object of a contract. Finally, Ryffel had trees on the property removed and thinned, in addition to other work being performed. Alpine received payment for its work. Thus, though the parties disputed its terms, there was sufficient evidence for the jury to find that all the elements of a contract existed. It was for the jury to weigh and resolve conflicts in the evidence, to judge the credibility of the witnesses, and to make factual determinations necessary to render a verdict. *Sandman*, ¶ 45. The evidence presented to the jury, consisting of both testimony of the parties and exhibits, was sufficient to support its findings that Ryffel breached the second agreement and that Alpine was damaged.

¶28 Ryffel Partnership also argues waiver or accord and satisfaction as a basis to reverse the jury's breach of contract determination respecting the second agreement. Ryffel Partnership maintains it argued all along that by cashing the check for $45,000, Alpine agreed to the terms as represented therein. However, the jury heard evidence supporting an alternate interpretation of events. By Ryffel's own testimony, he believed the check for $45,000 was meant for the purchase of a line machine, not as satisfaction of

all prior invoices. Further, Kammers' cell phone records showed that he had at least once attempted to contact Ryffel to discuss the letter. Shirley testified, too, that she attempted to contact Ryffel, but was only able to speak with his secretary. We find this evidence substantive enough for the jury to have found in favor of Alpine, and to have rejected the waiver, accord and satisfaction argument Ryffel Partnership now presents on appeal.

¶29 *2. Whether the District Court erred in denying Ryffel Partnership's motion for a new trial based on an inconsistent or illegal jury verdict.*

¶30 A district court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in Montana state court[.]" M. R. Civ. P. 59(a)(1)(A). A verdict may be vacated and a new trial granted when an aggrieved party's substantial rights are affected by a verdict that is against the law. Section 25-11-102(5)-(7), MCA. "When a jury's verdict is logically impossible and simply cannot be reconciled with the evidence, argument and legal theories presented at trial, the constitutional rights of the litigants to a fair trial requires [sic] that a new trial be ordered." *Four Beat*, ¶ 46. An irreconcilability of evidence, argument, and legal theory is rare, however, and will be found only in very limited circumstances. *Four Beat*, ¶ 46.

¶31 *Four Beat* exemplifies those infrequent circumstances. In *Four Beat*, Four Beat and Sierra—parties who were seeking to develop prospects for the acquisition or development of oil and gas—operated their venture in part based on a letter. *Four Beat*, ¶¶ 4-6. The jury found this letter did not constitute a contract between them. *Four Beat*, ¶ 17. This finding should have defeated Four Beat's claim, which was "premised solely upon the assertion that the Letter constituted a contract[.]" *Four Beat*, ¶ 38. However, the

16

jury also awarded Four Beat $2.5 million for Sierra's breach of the letter. *Four Beat,* ¶ 17. Even though there was arguably sufficient evidence for the jury to conclude that Four Beat suffered those damages as a result of the events contemplated in the letter, Four Beat could have been entitled to the damages award only if the jury had also found the letter created a contractual obligation from Sierra to Four Beat. Since the jury had found the opposite, that no contract existed between them, we reversed and remanded for a new trial because we found the verdict to be inconsistent, logically impossible, and incapable of reconciliation with the evidence, argument, and legal theories presented at trial. *Four Beat,* ¶ 46. In our analysis, we examined prior case law covering inconsistent verdicts: *Rudeck v. Wright,* 218 Mont. 41, 46, 709 P.2d 621, 624 (1985) (affirming the District Court's granting of a new trial where the jury's verdict was totally inconsistent and contrary to the mandates of the law); *Abernathy v. Eline Oil Field Servs., Inc.,* 200 Mont. 205, 217, 650 P.2d 772, 779 (1982) ("holding that when two conflicting verdicts are reached from the same evidence, a new trial is required"); *Mont. Bank of Red Lodge, N.A. v. Lightfield,* 237 Mont. 41, 49, 771 P.2d 571, 576-77 (1989) (affirming the district court's grant of a new trial when the jury findings were inconsistent and the court could not determine how the jury arrived at its conclusions). *Four Beat,* ¶ 41. These cases provide a roadmap for when a court might be willing to either correct a jury's verdict, finding it otherwise consistent, or to reverse and remand for a new trial based upon irreconcilable inconsistencies.

¶32 We have acknowledged certain grounds that will support a Rule 59 motion to alter or amend a judgment—one of which is to correct manifest errors of law or fact upon

17

which the judgment is based. *Nelson v. Driscoll*, 285 Mont. 355, 360, 948 P.2d 256, 259 (1997) (citing 11 Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure § 2810.1 (1995)). We note here also that, under Montana law, the equitable remedy of unjust enrichment is unavailable where there is a legal contract between the parties. *Maxted v. Barrett*, 198 Mont. 81, 87, 643 P.2d 1161, 1164 (1982).

¶33 In its Rule 59 Motion, Ryffel Partnership correctly argued that the jury's simultaneous finding that Ryffel Partnership had breached two contracts with Alpine, while also being unjustly enriched by Alpine's labor, was legally inconsistent. Here, however, the record reflects that the District Court was able to reconcile the jury's findings with established law by reassigning the jury's finding of damages from unjust enrichment to breach of contract, while still maintaining the integrity of the jury's verdict. Unlike in *Four Beat*, where no alternative remedial theory for recovery such as unjust enrichment was advanced, here, the special verdict form proposed two alternatives for recovery: breach of contract or unjust enrichment. Although unjust enrichment is only available in the absence of a contract, the jury found that a contract existed; that Ryffel had breached that contract; that the breach caused Alpine no damages; but that Alpine suffered damages in the amount of $50,348.18 as a result of Ryffel's unjust enrichment. It was not difficult for the trial court, and it is not difficult for us, to discern how the jury arrived at its conclusions and to correct the verdict's inconsistency: (1) Alpine's books as of 2008 accurately reflected the total of what Ryffel Partnership owed, that being $50,348.18; (2) that amount constituted the sum total of damages to Alpine arising out of the obligations created by the agreements between the parties; and (3)

Ryffel Partnership was either the breaching party, or the party unjustly enriched. The verdict was therefore reconcilable with the evidence presented at trial and may be corrected without compromising its integrity. As such, we cannot conclude that the trial court abused its discretion by amending the verdict and denying Ryffel Partnership's request for a new trial.

¶34    *3. Whether the District Court erred in denying Alpine's motion for pre-judgment interest pursuant to § 27-1-211, MCA.*

¶35    When a prevailing plaintiff's amount of recovery is capable of being made certain by calculation, that plaintiff is entitled to prejudgment interest under § 27-1-211, MCA. *Mont. Petroleum Tank Release Comp. Bd. v. Crumleys, Inc.*, 2008 MT 2, ¶ 99, 341 Mont. 33, 55, 174 P.3d 948, 965. There are three requirements under the statute: (1) an underlying monetary obligation must exist; (2) the amount of recovery must be capable of being made certain; and (3) the right to recover must vest on a particular day. *Petroleum Tank*, ¶ 99 (citing *Albers v. Bar ZF Ranch, Inc.*, 229 Mont. 396, 408, 747 P.2d 1347, 1354 (1987)). When the damages at issue are uncertain or disputed, an award of prejudgment interest is inappropriate. *Petroleum Tank*, ¶ 99 (citing *Northern Montana Hosp. v. Knight*, 248 Mont. 310, 320, 811 P.2d 1276, 1282 (1991)). "[N]o interest can run until a fixed amount of damages has been arrived at, either by agreement, appraisal, or judgment." *Northern Montana Hosp.*, 248 Mont. at 321, 811 P.2d at 1282 (quoting *Carriger v. Ballenger*, 192 Mont. 479, 486, 628 P.2d 1106, 1110 (1981)).

¶36    In *Petroleum Tank*, we found that certain administrative costs relating to an environmental cleanup and incurred by an insured as the result of an insurer's breach of

19

the duty to indemnify, should be considered consequential damages because they were contemplated by both parties at the time the insurance contract was entered into and would be the natural result of a refusal to indemnify. The terms of the policy were broad and did not qualify or limit what would be construed as an expense under the policy. Nonetheless, the policy contemplated that administrative costs incurred from a clean-up would be covered. *Petroleum Tank*, ¶¶ 68-71. We held that the insured was not entitled to prejudgment interest because the amount of damages to which the insured was entitled was not conclusively determined until the date the jury returned the verdict. *Petroleum Tank*, ¶¶ 100-01.

¶37 In *Northern Montana Hospital*, the hospital sought recovery from an architect for damages it incurred as the result of design defects and code violations in its newly constructed facility. *Northern Montana Hosp.*, 248 Mont. at 313, 811 P.2d at 1278. The hospital presented ample evidence as to its damages, resulting in a jury award of $1,750,000. *Northern Montana Hosp.*, 248 Mont. at 314, 321, 881 P.2d at 1278, 1282. However, the jury's award did not comport with any amount claimed by the hospital at trial. *Northern Montana Hosp.*, 248 Mont. at 321, 881 P.2d at 1282. We concluded that the amount awarded could not have vested until the date of the jury's verdict, and therefore affirmed the District Court's denial of prejudgment interest. *Northern Montana Hosp.*, 248 Mont. at 321, 881 P.2d at 1282.

¶38 Similar to both *Northern Montana Hospital* and *Petroleum Tank*, the amount to which Alpine was entitled was not conclusively determined until the date the jury returned the verdict. Unlike in *Petroleum Tank*, here, the terms of the agreement between

20

the parties were premised upon oral contracts, one of which comprised solely of a conversation between the parties. In *Petroleum Tank*, the contract at least contemplated through its terms the issues and damages raised in the suit. Here, the terms resulting from the oral agreements were cursory and the parties disputed each other's recollection of the meetings and the concomitant terms of agreement. As a result, the record shows it is unclear, at best, whether hauling charges to the mill should have been applied to Ryffel Partnership's running balance, and if Alpine was to be billing an hourly rate for logging work instead of a fee for the job. Further, Ryffel disputed that the check for $45,000 enclosed with his letter should have been applied to invoices—he believed it should have been used to purchase equipment. Those terms were disputed at trial, but each was supported with credible testimony. As a result, the jury could have reasonably determined any number of sums as an appropriate award for Alpine. Similar to *Northern Montana Hospital*, the jury was in no way bound by a particular amount and could have decided on nearly any award beyond or below that claimed by Alpine.

¶39   Although the District Court denied Alpine's motion for prejudgment interest by inaction, we do not disagree with the result. Uncertainty over the terms of the agreement and damages meant that the amount of Alpine's recovery was not certain or capable of being made certain by calculation. Alpine's claim for prejudgment interest thus fails to meet the requirements of § 27-1-211, MCA, and we affirm denial of the motion below accordingly.

**CONCLUSION**

¶40　The judgment of the District Court and its order entered pursuant to M. R. Civ. P. 59 are affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER