FILED

07/01/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0621

DA 24-0621

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 141N

IN RE THE MARRIAGE OF:

JAMES MICHAEL KAHL,

        Petitioner and Appellant,

   and

JENNIFER JUNE SPERANO,

        Respondent and Appellee.

APPEAL FROM:   District Court of the Twenty-Second Judicial District,
In and For the County of Carbon, Cause No. DR-2020-01
Honorable Matthew J. Wald, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Kevin T. Sweeney, Attorney at Law, Billings, Montana

      For Appellee:

          Jami L. Rebsom, Jami Rebsom Law Firm, LLC, Livingston, Montana

Submitted on Briefs:  May 28, 2025

Decided:  July 1, 2025

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 James Michael Kahl (James) appeals the August 9, 2024 Order of the Twenty-Second Judicial District Court, Carbon County, adopting the parenting plan granting primary custody of James's minor daughter, M.A.K., to her mother, Jennifer June Sperano (Jennifer). We affirm.

¶3 James raises four issues on appeal. First, the District Court committed reversible error by allowing the trial testimony of the Honorable Brenda R. Gilbert. Second, the District Court committed reversible error by not following the recommendation of the Guardian Ad Litem (GAL). Third, the District Court erred by finding as fact that Jennifer worked as a chemical dependency counselor. And fourth, the parenting plan ordered by the District Court is unworkable.

¶4 M.A.K. was born in May 2019. On January 6, 2020, James filed this matter originally as a dissolution and parenting plan action. However, the parties agreed they were never married, and this proceeding then continued as a parenting plan matter. Initially, the parents resided in Gardiner, Montana, but at the time of their separation, both parents resided together in Red Lodge, Montana. Upon ending their relationship, Jennifer returned to Gardiner and filed her own Petition for Parenting Plan and accompanying

2

motions in the Park County District Court on January 20, 2020. The Park County District Court then deemed venue was proper in the Carbon County District Court.

¶5 At a February 27, 2020 contested hearing on the temporary parenting plan, James requested that any visitation between M.A.K. and Jennifer be supervised due to Jennifer's "chemical dependency issues," and that primary custody of M.A.K. should be with him. Jennifer, however, argued that primary custody of M.A.K. should remain with her and that any visitations with James be supervised. She maintained she had been the primary caregiver since M.A.K.'s birth and that James's behavior could be "abusive, controlling, and unstable." The District Court denied the parties' requests for supervised visitation and ordered each parent have custody on alternating weeks. Generally, the parenting plan has been successful.

¶6 In the fall of 2024, M.A.K. began school. In anticipation of this, James requested an amended parenting plan that would place M.A.K. with him during the school year, and in turn grant Jennifer extended summer parenting time. Jennifer also asked for an amended parenting plan that placed M.A.K. with her during the school year, with James receiving extended summer parenting time provided he personally parented M.A.K. without the use of extended daycare. The District Court found Red Lodge and Gardiner to both be suitable places for M.A.K. In either town, she would have adequate school and housing situations, parental support, and social connections.

¶7 During weeks when she did not have M.A.K., Jennifer often worked double shifts as a server to ensure that she did not have to work during weeks where M.A.K. was in her care. Jennifer was also currently working towards earning her bachelor's degree in

addiction counseling, and intended to accept a job offer with an addiction treatment center when she finished. This would allow her to work while M.A.K. is in school and still be available to parent after school concludes.

¶8 Jennifer has had her struggles with alcohol addiction, but has been sober since shortly after M.A.K.'s birth. Throughout this case, she has been monitored for alcohol and drug use, and no violations have been noted. In 2020, Jennifer was convicted of a felony DUI stemming from a 2018 incident. As part of her sentence, Jennifer participated in the Park County Treatment Court with District Judge Brenda Gilbert (Judge Gilbert). Judge Gilbert praised Jennifer's performance in the Treatment Court, characterizing it as "remarkably positive." And, when offered early release from probation for good behavior, Jennifer declined and remained under the supervision of the Department of Corrections for another year to provide proof against any potential allegations from James that she was drinking. The District Court found no evidence Jennifer's past alcohol addiction ever put M.A.K. at risk.

¶9 The GAL acknowledged in her report and testimony that both homes would be appropriate for M.A.K., as both parents have a strong bond with M.A.K. and they meet her needs well. The GAL "ultimately recommended" that M.A.K. reside with James for the school year in Red Lodge. Her decision stemmed from Red Lodge having more opportunities for extracurricular activities, as well as M.A.K. having more established social relationships, including her attendance at daycare. She also considered Jennifer's DUI conviction, but still acknowledged her "extraordinary commitment to continued sobriety." The District Court, however, came to a different conclusion regarding where

4

M.A.K. should attend school. They determined that Jennifer's ability to care for M.A.K. after school, rather than a third party, was in M.A.K.'s best interests. Gardiner's four-day school weeks also allowed for an additional day for weekend visits with James that would otherwise be unavailable if she were to attend school in Red Lodge. Lastly, the District Court held that Jennifer's 2018 conviction did not affect her ability or suitability to parent now.

¶10 The District Court granted Jennifer primary custody of M.A.K. during the school year, with James having alternating weekends. During the summer, M.A.K. was to reside with James, with Jennifer having the option of visitation on the second weekend of each month, or an additional week of vacation time with M.A.K. The District Court also provided special exceptions for holidays, as well as restrictions around substance use by the parents, child support payments, and parental counseling. James now appeals.

¶11 A district court's findings of fact are reviewed to determine whether there is clear error. *In re S.W.B.S.*, 2019 MT 1, ¶ 10, 394 Mont. 52, 432 P.3d 709. "Findings are clearly erroneous if they are not supported by substantial evidence, the court misapprehended the effect of the evidence, or our review of the record convinces us that a mistake was made." *S.W.B.S.*, ¶ 10 (citing to *In re Marriage of Oehlke*, 2002 MT 79, ¶ 17, 309 Mont. 254, 46 P.3d 49). If the findings are not found to be clearly erroneous, then we will only reverse for a clear abuse of discretion. *S.W.B.S.*, ¶ 10; *Oehlke*, ¶ 9; *In re Marriage of Whyte*, 2012 MT 45, ¶ 23, 364 Mont. 219, 272 P.3d 102 ("explaining that child custody cases present the court with difficult decisions and, accordingly, we presume the court carefully considered the evidence and made the correct decision").

¶12　James argues the District Court inappropriately relied upon Judge Gilbert's testimony to show that Jennifer's past struggles with addiction was a nonissue.  Relying upon the Montana Code of Judicial Conduct and the Montana Rules of Evidence, James maintains that Judge Gilbert should have been barred from appearing as a witness and testifying before the District Court.  Montana Rule of Evidence 605 (Rule 605) provides that the judge presiding at a trial may not testify as a witness in that trial.  Section 26-10-605, MCA.  No objection is required to preserve this point.  Section 26-10-605, MCA.  Rule 3.3 of the Montana Code of Judicial Conduct (Rule 3.3) further provides that "[a] judge shall not testify as a character witness in a judicial, administrative, or other adjudicatory proceeding or otherwise vouch for the character of a person in a legal proceeding, except when duly summoned."  M. C. Jud. Cond. 3.3.

¶13　Here, there is no violation of Rule 605 or Rule 3.3 because Judge Gilbert was not the presiding judge in this case.  She was the judge in the Treatment Court from which Jennifer graduated as part of her sentence in her 2020 felony DUI conviction.  Judge Gilbert never testified on the ultimate issue of the case—the determination of which parent should be granted primary residential custody—and she provided relevant testimony concerning Jennifer's conduct, not her character.  Accordingly, there was no error in the District Court receiving and considering her testimony.

¶14　The role of the GAL outlined in § 40-4-205, MCA, includes duties such as conducting investigations, making written reports, and providing recommendations to the court.  However, these recommendations are advisory, and the District Court is not required

6

to adopt and follow all recommendations of the GAL. *In re Solem*, 2020 MT 141, ¶ 23, 400 Mont. 186, 464 P.3d 981.

¶15 The District Court acted within its powers in weighing and considering the recommendation from the GAL. "[J]udgments regarding the credibility of witnesses and the weight to be given their testimony are within the province of the District Court and we will not substitute our judgment for its determinations." *In re Marriage of Tummarello*, 2012 MT 18, ¶ 34, 363 Mont. 387, 270 P.3d 28. While the GAL believed Red Lodge to be a more suitable town than Gardiner, the District Court leaned more heavily on the fact that Jennifer would be able to care for M.A.K. full time after school, as opposed to a third party. The District Court also found the four-day school weeks in Gardiner to present a more favorable situation for M.A.K., as the long weekends allowed James an additional full day every weekend he has custody. Finally, while the GAL took into consideration Jennifer's 2018 DUI, the District Court held that her past conviction did not affect her ability to parent now. It is also notable that the District Court adopted many of the other recommendations made by the GAL. Thus, we conclude that the District Court properly evaluated the testimony and reports provided by the GAL.

¶16 James also contends that the District Court erred in finding that Jennifer worked as a counselor providing chemical dependency services. Findings of fact entered after a bench trial are reviewed to determine whether they are supported by substantial credible evidence. *Masters Grp. Int'l, Inc. v. Comerica Bank*, 2021 MT 161, ¶ 19, 404 Mont. 434, 491 P.3d 675. This evidence is reviewed "in the light most favorable to the prevailing party and leave[s] the credibility of witnesses and weight assigned to their testimony to the

7

determination of the district court." *Masters Grp. Int'l, Inc.*, ¶ 19. "Even when there is a conflict in the evidence, we will uphold a district court's decision where there is substantial credible evidence to uphold its findings of fact and conclusions of law." *Masters Grp. Int'l, Inc.*, ¶ 19.

¶17 Here, we conclude the evidence does not support a claim of clear error. On the contrary, the District Court found that Jennifer was studying to become an alcohol and addictions counselor, and that she planned to accept a job with an addiction treatment center when she finished school. Currently, she is working as a server. Nothing in the record indicates that Jennifer works with an addiction treatment center now, as James seems to be alleging. The District Court's findings of fact are supported by substantial credible evidence.[1]

¶18 Finally, James argues that the District Court's parenting plan is unworkable and fails to serve the best interests of M.A.K. Mainly, James raises concerns with the "approximate 200-mile distance" between the parents' respective homes. Consideration for the distance between Red Lodge and Gardiner was not raised at the District Court. Generally, this Court will not address issues or legal theories raised for the first time on appeal. *Ryffel Fam. P'ship v. Alpine Country Constr., Inc.*, 2016 MT 350, ¶ 24, 386 Mont. 165, 386 P.3d 971. "We will not unfairly fault a trial court for failing to rule correctly on an issue that it was

---

[1] Although the District Court wrote in its written judgment that Jennifer "has earned a degree to be a licensed addiction counselor[,]" the testimony and the court's oral findings indicate that the court understood Jennifer was pursuing a degree and path towards becoming an addictions counselor. To the extent there is any discrepancy or error in the court's written judgment, it does not affect the court's other findings and its ultimate conclusion regarding the parenting plan for the parties.

not asked to consider." *Ryffel Fam. P'ship*, ¶ 24. Without the evidence necessary in the record to support James's claim, we cannot examine this issue.

¶19 Because the District Court's findings are not clearly erroneous, nor was there any evidence of abuse of discretion, we affirm the District Court's finding for Jennifer as the primary parent to M.A.K.

¶20 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent.

/S/ LAURIE McKINNON

We Concur:

/S/ KATHERINE M BIDEGARAY
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ JIM RICE