No. 80-355

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

_____

JOHN CARRIGER,

Plaintiff and Respondent,

-vs-

GLEN BALLENGER AND BILL CLARK,

Defendants and Appellants.

_____

Appeal from: District Court of the Second Judicial District,
In and for the County of Silver Bow, The Honorable
Arnold Olsen, Judge presiding.

Counsel of Record:

For Appellant:

Daniel R. Sweeney, Butte, Montana

For Respondent:

Burgess, Joyce & Whelan, Butte, Montana

_____

Submitted on Briefs: March 11, 1981

Decided JUN 2 1981

Filed: JUN 1981

Thomas J. Kearney
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

On January 24, 1979, John Carriger filed a complaint in the Second Judicial District Court alleging breach of contract and damages due to the alleged failure of appellants Ballenger and Clark to complete the construction work according to the contract terms. The appellants counterclaimed for breach of contract and damages as a result of alleged conduct of respondent preventing their performance. Trial was held on April 3, 1980, before the court without a jury. The trial court's findings and conclusions were entered on April 30, 1980. Judgment was entered in favor of respondent Carriger in the amount of $1,200, plus interest. From the denial of their motion to amend the findings and conclusions or in the alternative for a rehearing, Ballenger and Clark appeal.

John Carriger owns a home in Butte, Montana. Prior to August, 1978, there was no basement in the home and the heating consisted of wall heaters. Carriger thought the heating system was dangerous and should be replaced, but in order to do so it was necessary to have a basement constructed.

The appellants, under the name of B & B Landscaping, were engaged in the business of installing lawns and doing excavation and construction work. Creighton Walsh, Jr., who is now married to Carriger's daughter, was employed as a parttime laborer by the appellants.

Carriger, through Walsh, obtained a written bid from the appellants on the cost of excavating and installing a finished basement under his house with a cement floor and pumice block walls. The written bid was broken down into three components as follows:

| | |
|---|---|
| Excavation | $1,200 |
| Pumice block walls | $3,800 |
| Floor | $2,000 |

The total cost was $7,000. On July 20, Carriger took the estimate to a bank and obtained a $8,527 loan for the construction and the heating system.

There was conflicting testimony with regard to the final agreement of the parties and the sequence of events. Carriger testified that he told Walsh to tell appellants to start work. Carriger and Walsh both testified that work began on August 1. Carriger testified that on August 4 the appellants came to him and requested a downpayment of either one-third of the excavation work or one-third of the entire contract. Carriger stated he asked them if they could get the work done by August 31 and when they both agreed to do so he gave them a check for $2,400. Walsh testified he was present on August 4 and witnessed the agreement on the completion date. Ballenger and Clark denied that they agreed to complete the work by August 31 but said they agreed to do it before winter. Clark testified that work had not started before they received the check, but that they began one or two days after August 4.

The trial court found that the respondent accepted the bid on August 4, 1978 on the condition that the work was to be completed by August 31, 1978.

Due to delays the excavation work was not completed until August 31, and the work on the floor and walls had not yet begun. Upon Carriger's inquiry, the appellants advised him that they could not do the remaining work themselves. They sent York, a masonry and concrete contractor, to the premises. Carriger was most anxious to have the job completed because of the risk of freezing water pipes. Apparently York would not give Carriger priority unless he was hired directly instead of on a subcontract basis. According to Carriger, Ballenger agreed to this arrangement and agreed to refund $1,200 of the downpayment. Ballenger testified that York was to be a subcontractor, that he never gave permission to Carriger to hire York directly, and that he had not

agreed to return $1,200. York completed the work on September 22, 1978, with Carriger and Walsh doing the hod carrying and backfilling work. At that time Walsh was no longer employed by B & B.

Carriger demanded the return of $1,200 from the appellants, but appellants refused to return it. The matter was heard on April 3, 1980, and the trial court entered its findings and conclusions on April 30, 1980. The court found that Carriger accepted appellants' bid on the condition that they finish the entire job on August 31, 1978, and that the appellants breached the contract by failing to complete the work by that date or at all. The trial court awarded damages to respondent in the amount of $1,200, plus interest at the legal rate from August 31, 1978, and costs.

Appellants raise the following issues:

(1) Did the written bid constitute a written contract?

(2) Did the parol evidence rule bar admission of testimony regarding an oral agreement as to the completion date?

(3) Did the trial court err in failing to find that the respondent partially rescinded the contract and that appellants were entitled to the reasonable value of their work in the amount of $2,400?

(4) Did the trial court err in finding respondent suffered damages in the amount of $1,200?

(5) Did the trial court err in awarding interest from the date of breach rather than from the date of judgment?

Appellants first argument is based upon the premise that their written bid constituted a contract. From that premise, appellants argue that the parol evidence rule bars testimony concerning a completion date not contained in the writing, and that time is not of the essence unless expressly provided in the writing.

- 4 -

Appellants' basic premise is not consistent with contract law. Their reliance on Higby v. Hooper (1950), 124 Mont. 331, 221 P.2d 1043, is misplaced. In that case the construction contractor was seeking to recover his costs in excess of the contract price of $8,300. The contractor had written a letter certifying to the U. S. Government that the cost would not exceed $8,300, for the purpose of facilitating the buyer's V.A. loan. The letter was held to be the contractor's statement that he had contracted with the buyer and he was estopped to deny it.

A written bid has consistently been construed as nothing more than an offer to perform labor or supply materials, and the offer does not ripen into a contract until accepted by the offeree. Gulf Oil Corp. v. Clark County (1978), 94 Nev. 116, 575 P.2d 1332; Clover Park School District No. 400 v. Consolidated Dairy Products Co. (1976), 15 Wash.App. 429, 550 P.2d 47; Savoca Masonry Co., Inc. v. Homes & Son Constr. Co., Inc. (1975), 112 Ariz. 392, 542 P.2d 817; O. C. Kinney, Inc. v. Paul Hardeman, Inc. (1963), 151 Colo. 571, 379 P.2d 628. The trial court found that Carriger accepted the bid on August 4, 1978, upon the condition that the work be completed by August 31, 1978. According to Montana law, a purported acceptance which varies or adds to the terms of the offer is not an acceptance but a counteroffer. Section 28-2-504, MCA. Upon acceptance by the appellants of Carriger's counteroffer, the contract would have ripened.

The trial court found that the parties had orally agreed to the completion date of August 31, 1978, which amounts to a finding that the counteroffer was orally accepted by appellants. Appellants dispute this finding, asserting that Carriger did not even mention a completion date other than "before winter," but the trial court found otherwise. This Court will not set aside findings of fact unless clearly erroneous and will give due regard to the opportunity of the trial judge to determine the credibi-

lity of the witnesses. Rule 52(a), M.R.Civ.P.

The contract which resulted from the written bid (the offer), the counteroffer and the acceptance was partly written and partly oral. Since there was not a final, complete written document intended by the parties to contain all of the terms of the contract, the parol evidence rule does not apply. Section 28-2-904, MCA.

Section 28-3-602, MCA, providing that time is not of the essence in a contract unless expressly made so by its terms, does not pertain solely to written contracts. Parties to an oral contract may also provide that time is of the essence. By agreeing to the completion date with the knowledge that Carriger deemed the date essential due to the approaching cold weather, the appellants agreed that time was of the essence. Time being of the essence, appellants were thus in substantial breach as of August 31, 1978, when the entire contract had not been performed.

Appellants' second argument is that Carriger rescinded the contract when he hired York on a direct basis to complete the job, thus preventing performance by appellants who had intended to use York as a subcontractor. Appellants argue that by virtue of this rescission they are entitled to the reasonable value of the excavation work in the amount of $2,400. But where, as here, the trial court based its judgment on a prior breach of contract by appellants, this argument lacks merit.

The final two issues concern the measure of damages and amount of interest due the respondent as a result of the appellants' breach. For breach of contract, the measure of damages is stated generally as the amount which will compensate the aggrieved party for all the detriment proximately caused thereby. Section 27-1-311, MCA. In a construction contract where the contractor abandons the project or otherwise fails to complete it, the normal measure of damages is the reasonable cost of

completion by another plus any damages suffered by the delay. Kirby v. Kenyon-Noble Lumber Co. (1976), 171 Mont. 329, 558 P.2d 452. In this case, York completed the contract at essentially the same price quoted by the appellants, except that Carriger and his son-in-law contributed their own labor in order to get the job done faster. The trial court found Carriger suffered damages in the amount of $1,200, which we find is adequate compensation for the detriment caused by the breach.

The trial court awarded interest from the date of the breach of contract, August 31, 1978. Appellants argue that interest commences on the date of judgment pursuant to section 25-9-204, MCA.

The court erred in applying section 27-1-211, MCA, to this case. That statute provides:

> "Every person who is entitled to recover damages certain or capable of being made certain by calculation and the right to recover which is vested in him upon a particular day is entitled also to recover interest thereon from that day except during such time as the debtor is prevented by law or by the act of the creditor from paying the debt."

Two of the criteria in the above-quoted statute are met, i.e. Carriger was entitled to recover damages and the right to recover damages vested on the date of breach. However, the amount of the damages due upon breach was not clearly ascertainable until determined by the trial court. This Court has interpreted the statute to mean that no interest can run until a fixed amount of damages has been arrived at, either by agreement, appraisal, or judgment. School Dist. No. 1 v. Globe & Republic Ins. Co. (1965), 146 Mont. 208, 404 P.2d 889. Since this is not an action on a negotiable instrument or for the definite unpaid balance of a contract or account, see Agrilease, Inc. v. Gray (1977), 173 Mont. 151, 566 P.2d 1114; Sun River Cattle Co. v. Miner's Bank of Montana (1974), 164 Mont. 479, 525 P.2d 19; where the damages are a sum certain, section 27-1-211, MCA, is not applicable. Interest from the date of judgment at the legal rate of 10% per

annum is allowable under sections 25-9-204 and 25-9-205, MCA.

The case is remanded for modification of the judgment to provide interest at 10% from the date of judgment and as so modified, the judgment is affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices