Justice Beth Baker delivered the Opinion of the Court.
***251 ¶ 1 Bryan Sandrock appeals and Kevin DeTienne cross-appeals a judgment and order of the First Judicial District Court, Lewis and Clark County, that awarded DeTienne $1,291,635 in lost profits;
***252 prejudgment interest accruing from September 11, 2015; $150,000 in punitive damages; and $42,009.05 in attorney fees and costs. We address the combined restated issues on appeal and cross-appeal:
1. Did the District Court abuse its discretion in awarding DeTienne compensatory damages or clearly err in awarding DeTienne punitive damages?
2. Did the District Court properly award prejudgment interest on the damages award?
3. Did the District Court properly award attorney fees to DeTienne when it did not include costs and fees for the proceedings on remand, and is DeTienne entitled to attorney fees on appeal?
¶ 2 We affirm in part and remand with instructions to address whether the mortgage should offset the awarded compensatory damages; to calculate incrementally the prejudgment interest for Train Station's damages back to December 1, 2009; and to calculate and award attorney fees for the proceedings on remand and for this current *15 appeal. We reverse the award of prejudgment interest on Money Train's lost profits.
PROCEDURAL AND FACTUAL BACKGROUND
¶ 3 This case is before the Court for the third time. See DeTienne v. Sandrock , 2017 MT 181, 388 Mont. 179, 400 P.3d 682 [hereinafter DeTienne II ]; Sandrock v. DeTienne , 2010 MT 237, 358 Mont. 175, 243 P.3d 1123. We discussed the facts in detail in DeTienne II and here review only those facts necessary to address the relevant issues.
¶ 4 In 2007, DeTienne's mother established The Train Station, LLC, to purchase real property located on Custer Avenue in Helena (the "Custer Property"), on which to establish a casino that DeTienne would run through his company, The Money Train, LLC. Because of a delay in financing, DeTienne entered an oral agreement for a short-term gap loan with Sandrock, a local businessman and acquaintance of DeTienne. In exchange for the loan, Sandrock was granted a fifty-percent membership in Train Station. DeTienne's mother's trust, of which DeTienne is now successor Trustee, held the other fifty-percent interest.
¶ 5 In June 2008, Train Station entered into a fifteen-year lease agreement with Money Train to lease the Custer Property. Money Train operated a casino on the property. Train Station used Money Train's monthly lease payments to pay the monthly mortgage payments on the Custer Property. In November 2009, after a dispute led DeTienne to deposit lease payments into the Trust's bank account instead of the Train Station's bank account, Sandrock filed an action ***253 to evict DeTienne and Money Train from the Custer Property. In February 2010, representing that he was the sole member and only interest holder in the assets of Train Station, Sandrock transferred the real property by deed to GG&ME, LLC, a Montana limited liability company, of which he is the managing member. Sandrock secured a new loan on behalf of GG&ME in the amount of $790,000. At the time of closing, the balance of Train Station's mortgage on the property was $629,075, which was paid by GG&ME through the new loan. GG&ME then leased the property to Draes, Inc., a corporation formed that month whose sole shareholders are Sandrock and his wife. Draes operated a casino on the property and paid monthly rent to GG&ME.
¶ 6 In March 2010, DeTienne filed suit against Sandrock, seeking a declaratory judgment that Sandrock's transfer of the property was unlawful because it was done without consent of all Train Station members. Over Sandrock's objection, the District Court allowed DeTienne to file a second amended complaint in February 2015 and instructed Sandrock to respond to DeTienne's complaint within thirty days. Sandrock failed to answer the second amended complaint within that time, and his default was entered in September 2015.
¶ 7 A year later, the District Court issued its Judgment and Judicial Decree, ordering that: (1) Sandrock was dissociated and expelled from membership in Train Station; (2) the previous transfer of the property to GG&ME by Sandrock was "void and of no force and effect"; and (3) the leasehold to Draes was void, and the lessees had thirty days to vacate the premises. The court awarded compensatory damages to DeTienne in the amount of $2,083,171, plus specified interest, punitive damages of $150,000, and costs and attorney fees. Sandrock moved the District Court to set aside the default judgment. The motion was deemed denied after sixty days.
¶ 8 Sandrock appealed the District Court's denial of his motion to set aside default judgment and its calculation of damages. We held that the District Court did not slightly abuse its discretion in denying Sandrock's motion for relief and reconsideration of the judgment and judicial decree. DeTienne II , ¶ 42. But because we were unable to discern how the court used various amounts to establish the damages awarded, we remanded the case to the District Court for an order setting forth its recalculation and determination of damages and identification of evidence supporting the recalculation. DeTienne II , ¶ 48.
¶ 9 On remand, the District Court held an evidentiary hearing on compensatory damages. Defense expert Lenore Romney testified *16 and provided an analysis of the lost profits report previously prepared by ***254 WIPFLi CPAs and consultants. Plaintiffs' expert Natalya Abdrasilova provided testimony regarding Romney's analysis and provided revisions to the original WIPFLi report. Relying on the revised WIPFLi report and Abdrasilova's testimony, the District Court found that Train Station lost profits in the amount of $922,602, and Money Train lost profits in the amount of $489,033. The District Court reduced the total lost profits by the $120,000 that Sandrock initially contributed and awarded compensatory damages for economic loss in the amount of $1,291,635. The court ordered that prejudgment interest for the total award would accrue from September 11, 2015-the date Sandrock's default was entered. Analyzing DeTienne's claim for punitive damages, the court reaffirmed its previous $150,000 punitive damages award, despite discrepancy in the record regarding Sandrock's net worth. The District Court again awarded attorney fees and costs in the amount of $42,009.05.
STANDARDS OF REVIEW
¶ 10 We review a district court's award of damages for abuse of discretion. Czajkowski v. Meyers , 2007 MT 292, ¶ 13, 339 Mont. 503, 172 P.3d 94. "Proof of damages must consist of a reasonable basis for computation and the best evidence obtainable under the circumstances which will enable a judge to arrive at a reasonably close estimate of the loss." In re Marriage of Mease , 2004 MT 59, ¶ 42, 320 Mont. 229, 92 P.3d 1148. We discuss other applicable standards in addressing each issue.
DISCUSSION
¶ 11 1. Did the District Court abuse its discretion in awarding DeTienne compensatory damages or clearly err in awarding DeTienne punitive damages?
¶ 12 The issues on appeal and cross-appeal divide into four categories: challenges to the effect of the Train Station mortgage on the compensatory damages calculation, the treatment of Money Train's lost profits, the award and calculation of punitive damages, and challenges to other specific items of claimed damages. We discuss each in turn.
Mortgage
¶ 13 Sandrock argues that the District Court erred when it failed to offset Train Station's compensatory damages by the payoff of the existing mortgage on the Custer Property. Sandrock maintains that he paid down the mortgage on the property from $629,075 to $378,777 before the property was returned to DeTienne and that, if he is ***255 required to pay the remaining balance with no offset, DeTienne will recover a windfall.
¶ 14 The measure of compensatory damages for a tort is the amount for all the detriment proximately caused by the defendant's conduct, whether it could have been anticipated or not. Section 27-1-317, MCA. This Court requires that a party seeking lost profits establish them with some certainty and prove the source. Sage v. Rogers , 257 Mont. 229, 241, 848 P.2d 1034, 1041 (1993). Damages must be supported by substantial evidence, not mere guess or speculation, but mathematical precision is not required. In re Marriage of Mease , ¶ 42.
¶ 15 The District Court recognized Sandrock's reduction of the debt on the Custer Property to a balance of $378,777, as of the September 28, 2016 judgment. The court's findings on the effect of this mortgage reduction are not entirely clear. DeTienne's expert, Abdrasilova, testified that the original mortgage of the Train Station would have been reduced to $378,777, as of September 30, 2016, when Sandrock was dissociated from Train Station. Abdrasilova lists the mortgage balance as a "Possible Offset[ ] to Economic Loss" on Schedule A to her response to Romney's expert report. The District Court found Abdrasilova's calculations to be consistent with the court's prior rulings, "including the conclusion that loan payments made by GG&ME for its mortgage are not a proper offset to the losses incurred by Train Station." Abdrasilova acknowledged at the damages hearing, however, that:
I believe the proper setoff for-or proper offset for the Train Station's losses would be to take a look at the mortgage that *17 existed on that property before it was wrongfully conveyed to the defendants.
Q. Where does that lead us?
A. So that leads us to an offset of $378,777, which would have been the balance on the mortgage on the Custer property as of September 30, 2016, had the Money Train remained a tenant at the Custer property.
The court found "the balance of the mortgage on the Custer property as of September 28, 2016 to be $378,777 as calculated by Abdrasilova, accurately reflecting the most credible evidence presented and legal determinations previously made in this case."
¶ 16 The court thus recognized the mortgage, but it nonetheless awarded the full $922,602 without discussing the offset. We are unable to discern whether the District Court intended to offset the mortgage to establish the amount of damages awarded. It first stated that loan payments GG&ME made "are not a proper offset to the losses incurred ***256 by Train Station," but then accepted the $378,777 balance as Abdrasilova testified. We may remand an award of damages that does not explain how the amounts are used to establish the award. See DeTienne II , ¶ 48. It is not clear whether it was an oversight to not offset the damages after recognizing the mortgage or whether the court intentionally did not offset the damages for reasons it did not explain. DeTienne does not separately defend the court's failure to offset the mortgage balance, but argues generally that the court did not abuse its discretion in determining Train Station's total damages. We remand to the District Court with instructions to clarify its determination of damages with reference to the effect of the September 2016 mortgage balance.
Money Train Lost Profits
¶ 17 Sandrock argues that the District Court erroneously relied on Abdrasilova's 2017 revised WIPFLi damage calculations regarding Money Train's lost profits. He contends that the WIPFLi report is speculative and irrational because it changed the basis for its calculations from that used in the 2015 report, comparing Money Train's revenues with Draes's revenues without any analysis or discussion of comparability of the casinos. Sandrock maintains that the court also erred when it failed to offset Money Train's lost profits by DeTienne's personal income from other employment during the years he was wrongfully evicted from the Custer Property.
¶ 18 Damages for lost profits may be awarded if they are the "natural and direct result of the act of the defendant" and the loss is not speculative. Olson v. Parchen , 249 Mont. 342, 348, 816 P.2d 423, 427 (1991) (citations omitted). The profits are speculative if it is uncertain whether the loss was a result of the wrong or whether the claimed profit would have been derived at all, but not when the amount of such profits is merely uncertain. Olson , 249 Mont. at 348, 816 P.2d at 427.
¶ 19 The District Court relied on Abdrasilova's testimony and the court's interpretation of the WIPFLi report in determining its award of lost profit damages for Money Train. Sandrock does not contend that his wrongful eviction did not cause lost profits to DeTienne. Sandrock instead challenges the amount of lost profits that the District Court awarded on the basis of Abdrasilova's opinion and the comparison with Draes's casino revenues. The District Court found that if DeTienne had not been evicted from the Custer Property, Money Train would have continued to make a profit. Money Train thus suffered economic loss directly due to Sandrock's actions. Abdrasilova's report specifically described how she calculated Money Train's lost profits. She testified ***257 that "Drae's [sic] is a good benchmark for the Money Train because it's a casino operation that uses the same gaming machines at the exact same location for the same time periods." Sandrock's expert disagreed, but the District Court explained it found Abdrasilova's calculations "an accurate reflection of lost profits for Money Train."
¶ 20 The factfinder remains free to disregard an expert's testimony. Willis v. Fertterer , 2013 MT 282, ¶ 35, 372 Mont. 108, 310 P.3d 544. The trial court is entitled to weigh the credibility of experts and "in the event of conflicting evidence on factual issues, the trier of fact determines which will *18 prevail." Boushie v. Windsor , 2014 MT 153, ¶ 12, 375 Mont. 301, 328 P.3d 631 (quoting State v. Gladue , 1999 MT 1, ¶ 40, 293 Mont. 1, 972 P.2d 827 ). The court did not abuse its discretion by relying on DeTienne's expert's testimony. Abdrasilova's calculations are not speculative merely because Sandrock disputes the amount. The District Court's award is supported by substantial evidence in the record.
¶ 21 Finally, Sandrock does not establish support for his argument that the court failed to require DeTienne to mitigate his damages with income from other employment while he was wrongfully evicted from the Custer Property. Abdrasilova's report explained that DeTienne took appropriate steps "to mitigate his beverage sales losses by employing his liquor license under a different business model," and she offset DeTienne's beverage income in her calculations beginning in 2013, when he began to realize income from his new location. The District Court did not abuse its discretion in relying on WIPFLi's report to award Money Train lost profit damages, and we affirm the award.
Punitive Damages
¶ 22 Sandrock maintains that the District Court erred in awarding punitive damages because it denied him "the opportunity to address the reasoning behind his actions" when the court decided to not have a full rehearing on the issue. DeTienne argues on cross-appeal that the punitive damages should be increased because of Sandrock's representation before this Court that his net worth was more than he originally represented to the District Court. In the first judgment, the District Court found that Sandrock's projected net worth was $5 million. In his affidavit in support of a motion to stay the judgment pending appeal of DeTienne II , Sandrock represented to this Court that his collective net worth was estimated at nearly $6.9 million. DeTienne contends that the punitive damages therefore should be increased to three percent of Sandrock's claimed net worth.
***258 ¶ 23 Reasonable punitive damages may be awarded when a defendant has been found guilty of actual fraud or actual malice. Section 27-1-221(1), MCA. Section 27-1-220(3), MCA, provides, "[a]n award for punitive damages may not exceed $10 million or 3% of a defendant's net worth, whichever is less."
¶ 24 We review a district court's punitive damage findings under a three-part test to determine whether they are clearly erroneous. Marie Deonier & Assocs. v. Paul Revere Life Ins. Co. , 2004 MT 297, ¶ 39, 323 Mont. 387, 101 P.3d 742. We first review the record to see if the findings are supported by substantial evidence. Marie Deonier & Assocs. , ¶ 39. If the findings are supported by substantial evidence, we determine if the trial court misapprehended the effect of the evidence. Marie Deonier & Assocs. , ¶ 39. Finally, this Court still may conclude that a finding is clearly erroneous when, although there is evidence to support it, a review of the record leaves us with the definite and firm conviction that a mistake has been committed. Marie Deonier & Assocs. , ¶ 39.
¶ 25 The District Court found in its 2016 judgment that Sandrock fraudulently conveyed Train Station "essentially to himself," and that he wrongfully evicted DeTienne and Money Train from the property to operate a casino. The court found that punitive damages were appropriate for such egregious behavior. In DeTienne II , this Court did not disturb the District Court's finding that Sandrock acted with actual malice or fraud. Upon review of the District Court's findings and the record, we conclude that Sandrock has not met his burden of proving clear error in awarding punitive damages. We need address further only whether the punitive damages award should be increased.
¶ 26 On remand, recognizing that there "may be discrepancy regarding Sandrock's current net worth based on testimony and evidence presented," the District Court found that the amount of punitive damages awarded previously was appropriate. The court did not make any additional findings regarding Sandrock's net worth. Section 27-1-220(3), MCA, provides the maximum amount of punitive damages that may be awarded, but it does not require the District Court to award that maximum amount. Substantial evidence supports the District Court's findings that *19 punitive damages are appropriate, and there is nothing to suggest that the court misapprehended the effect of the evidence. After review of the record, we are not left with a definite and firm conviction that the District Court made a mistake in failing to award more punitive damages. We therefore affirm the District Court's award of $150,000 in punitive damages. ***259 Other Claims
¶ 27 Sandrock also claims error in the District Court: miscalculating the actual mortgage offset value; failing to account for his fifty-percent ownership interest in Train Station; failing to calculate the fair value of his distributional interest upon dissociation of Train Station; and erroneously calculating the time period of lost profits. DeTienne, in turn, claims that the District Court abused its discretion by not awarding damages associated with other property he refers to as the "Lyndale Property." The District Court thoroughly considered the evaluations and testimony of Sandrock's expert Romney and DeTienne's expert Abdrasilova, and analyzed each element of damages DeTienne claimed and Sandrock disputed. Its findings are supported by substantial evidence. The parties fail to establish clear error in the record or any other legal basis to support a conclusion that the District Court abused its discretion on these issues when it calculated the awarded damages. Upon review of the record and the District Court's findings, we conclude that neither Sandrock nor DeTienne has met his burden of showing that the court abused its broad discretion in awarding damages.
¶ 28 2. Did the District Court properly award prejudgment interest on the damages award?
¶ 29 Sandrock contends that DeTienne is not entitled to any prejudgment interest because the damages are incapable of being made certain and that no right to recovery vested until the District Court entered its December 11, 2017 order. DeTienne responds that the District Court fully explained Train Station's lost profit damages as capable of being calculated with certainty and that it vested on a particular day. On cross-appeal, however, he contends that the right to recover Train Station's damages vested on December 1, 2009, not on September 11, 2015. DeTienne does not argue that Money Train's damages vested on December 1, 2009.
¶ 30 The decision to award prejudgment interest is reviewed to determine whether the district court correctly interpreted the law. DiMarzio v. Crazy Mountain Constr., Inc. 2010 MT 231, ¶ 23, 358 Mont. 119, 243 P.3d 718. "The primary objective of the prejudgment interest statute is to 'fully compensate the injured party for the loss of use of his money during the period in which a valid claim was not paid.' " New Hope Lutheran Ministry v. Faith Lutheran Church of Great Falls, Inc. , 2014 MT 69, ¶ 70, 374 Mont. 229, 328 P.3d 586 (quoting Kraft v. High Country Motors, Inc. , 2012 MT 83, ¶ 71, 364 Mont. 465, 276 P.3d 908 ). Prejudgment interest is awarded when:
***260 (1) there is an underlying monetary obligation; (2) the amount of recovery is certain or capable of being made certain; and (3) the right to recover vests on a particular day. New Hope Lutheran Ministry , ¶ 70 ; accord § 27-1-211, MCA. The award of interest is not discretionary if the party requesting prejudgment interest satisfies the criteria under § 27-1-211, MCA. Kraft , ¶ 71. "Prejudgment interest is 'simply an ingredient of full compensation that corrects judgments for the time value of money.' " Stafford v. Fockaert , 2016 MT 28, ¶ 31, 382 Mont. 178, 366 P.3d 673 (quoting Donell v. Kowell , 533 F.3d 762, 772 (9th Cir. 2008) ). The interest "serves to compensate the injured party for the loss of the use of her money 'from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury th[e] damages are intended to redress.' " Stafford , ¶ 31 (quoting West Virginia v. United States , 479 U.S. 305, 310 n.2, 107 S.Ct. 702, 704 n.2, 93 L.Ed.2d 639 (1987) ).
¶ 31 The District Court's order on remand awarded DeTienne a combined $1,291,635 damages for both Train Station and Money Train. It imposed prejudgment interest on the entire award. We address each entity's damages separately.
*20 Train Station Damages
¶ 32 The District Court awarded $922,602 in damages for Train Station. As to the first factor, neither party disputes that there was an underlying monetary obligation. As to the second factor, the court set forth a specific, certain calculation for the compensatory damages awarded to Train Station based almost exclusively on lost lease payments. The District Court calculated Train Station's lost profits according to the WIPFLi report analysis: monthly lease payments that would have been paid by Money Train during the wrongful eviction, plus income from a sign lease at the property, minus lease income received from Money Train, with deductions for property taxes to be paid after ownership transfer and saved expenses for Money Train. All figures in the calculation were ascertainable when DeTienne and Money Train were wrongfully evicted.
¶ 33 Finally, we examine whether the right to recovery vested on a particular date. On cross-appeal DeTienne argues that the date the right vested was December 1, 2009-the date he was evicted from the Custer Property-and not September 11, 2015, as the District Court held. DeTienne's cause of action arose when he was wrongfully evicted from the Custer Property, rendering him unable to use the profits for a productive purpose. Prejudgment interest accrues from the date the right to recover vested. Stafford , ¶ 30 ; see ***261 Carriger v. Ballenger , 192 Mont. 479, 486, 628 P.2d 1106, 1110 (1981). Here, that occurred when DeTienne was improperly ousted and suffered injury, not when Sandrock's default was entered. See Stafford , ¶¶ 30-31. "Using any other date for accrual would run counter to the purpose of prejudgment interest and would not fully compensate" Train Station for its loss. Stafford , ¶ 31. We therefore conclude that Train Station is entitled to prejudgment interest beginning on December 1, 2009. We remand with instructions to incrementally calculate the prejudgment interest for Train Station damages back to December 1, 2009.
Money Train Damages
¶ 34 The District Court awarded Money Train $489,033 in lost profits damages and prejudgment interest accruing from September 11, 2015. Sandrock argues that prejudgment interest is inappropriate because the damages rely on projected business operating expenses and require a factual determination by a fact finder. DeTienne does not address prejudgment interest as to Money Train's damages.
¶ 35 We have explained that § 27-2-211, MCA, allows "no interest [to] run until a fixed amount of damages has been arrived at, either by agreement, appraisal, or judgment." Carriger , 192 Mont. at 486, 628 P.2d at 1110. Damages arising from an action on a negotiable instrument or for the definite unpaid balance of a contract or account qualify for prejudgment interest because the damages are a sum certain. See Carriger , 192 Mont. at 486, 628 P.2d at 1110. A damage award does not qualify for prejudgment interest when a fact finder is "in no way bound by a particular amount and could [ ] decide[ ] on nearly any award beyond or below that claimed." Ryffel Family P'ship v. Alpine Country Constr., Inc. , 2016 MT 350, ¶ 35, 386 Mont. 165, 386 P.3d 971.
¶ 36 Unlike Train Station's damages, which were based almost exclusively on the lease agreement, Money Train's damages were not readily ascertainable until determined by the trial court. Sandrock's expert Romney and DeTienne's expert Abdrasilova disagreed on how to calculate the lost profits. Sandrock opined that Money Train suffered "no economic loss" because it actually earned $375,704 more during the wrongful eviction than it would have had it remained a tenant of the Custer Property. Abdrasilova used Draes's gaming revenue and gaming industry data to calculate the $489,033 lost profits, which the District Court accepted. What's more, Abdrasilova changed her calculation of Money Train's damages by using Montana gaming industry revenue data when she had used national industry data in her 2015 calculations. Money Train's lost profits were not based upon a ***262 previously agreed amount or a sum certain balance. The lost profits could not be ascertained until the District Court made its findings following the damages hearing and calculated the damages. Although Money Train did lose profits and its *21 right to recover those profits started the day that it was evicted from the Custer Property, because the amount of recovery was not readily ascertainable until determined by the trial court, Money Train is not entitled to prejudgment interest. We reverse the award of prejudgment interest on Money Train's lost profits and remand for entry of a corrected judgment excluding the interest on Money Train's damages.
¶ 37 3. Did the District Court properly award attorney fees to DeTienne when it did not include costs and attorney fees for the proceedings on remand, and is DeTienne entitled to attorney fees on appeal?
¶ 38 Sandrock argues that the District Court erred in awarding DeTienne attorney fees because there was no contract or statute supporting such an award. DeTienne counters that the costs and attorney fees properly were awarded, but that each should be increased for the time this matter was on remand and for having to reargue the matter on appeal.
¶ 39 We review for correctness a court's decision that legal authority exists to award attorney fees. Mlekush v. Farmers Ins. Exch. , 2015 MT 302, ¶ 8, 381 Mont. 292, 358 P.3d 913. If legal authority exists to award attorney fees, we review the district court's decision to grant or deny the fees for abuse of discretion. Wohl v. City of Missoula , 2013 MT 46, ¶ 29, 369 Mont. 108, 300 P.3d 1119. Under the Montana Limited Liability Company Act, if a party acts "arbitrarily, vexatiously, or not in good faith," a court may award the other party reasonable expenses, including attorney fees. Section 35-8-809(4), MCA. A prevailing party awarded attorney fees in the district court's discretion is entitled to an award of costs and attorney fees incurred in successfully defending a subsequent appeal. Nason v. Leistiko , 1998 MT 217, ¶ 23, 290 Mont. 460, 963 P.2d 1279.
¶ 40 The District Court did not abuse its discretion in awarding DeTienne reasonable attorney fees and costs. It held that Sandrock, as a member of Train Station, breached his duty to Train Station when he fraudulently represented himself as the sole member and sold the Custer Property. We upheld that ruling in DeTienne II . The court found that Sandrock's "malicious and fraudulent conduct meets the statutory threshold for an award of attorney fees as acting 'artibrarily, [sic] vexatiously, or not in good faith.' " Section 35-8-809(4), MCA, supplies a statutory basis under the Montana Limited Liability Act for the fee award. Contrary to Sandrock's assertion that the Act is not ***263 applicable to this case, several claims in DeTienne's second amended complaint arose under the Montana Limited Liability Act, including the dissociation claim that was again at issue on remand. DeTienne has incurred further attorney fees and costs in defending this appeal, and "awarding such fees on appeal is consistent with the District Court's award." See Nason , ¶ 23. We therefore conclude that the District Court did not err in awarding attorney fees and costs; DeTienne also is entitled to an award of reasonable costs and attorney fees incurred during the litigation on remand. For the same reason, we award attorney fees in connection with this appeal.
CONCLUSION
¶ 41 As to the issues raised on appeal, we affirm in part and reverse in part, and remand with instructions to address whether the current mortgage balance should offset the compensatory damages and to remove the prejudgment interest from Money Train's damages. As to the issues raised on cross-appeal, we affirm and remand with instructions to calculate incrementally the prejudgment interest for Train Station damages back to December 1, 2009, and to calculate costs and attorney fees for the proceedings on remand and for this current appeal.
We Concur:
LAURIE McKINNON, J.
JAMES JEREMIAH SHEA, J.
DIRK M. SANDEFUR, J.
JIM RICE, J.