FILED

05/13/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0238

DA 24-0238

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 99

---

JOHN GROSVOLD, d/b/a/
GROSVOLD EXCAVATING,

      Plaintiff, Counterclaim-Defendant,
      Appellee, and Cross-Appellant,

    v.

J. BOWMAN NEELY and THE BOWMAN
NEELY REVOCABLE TRUST,

      Defendant, Counterclaim-Plaintiff,
      Appellant, and Cross-Appellee.

---

APPEAL FROM:    District Court of the Third Judicial District,
                In and For the County of Anaconda-Deer Lodge, Cause No. DV 22-03
                Honorable Robert J. Whelan, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            J. Bowman Neely, Self-Represented, Missoula, Montana

      For Appellee:

            Bernard J. "Ben" Everett, J. Ben Everett, Everett Cook Law, Anaconda,
            Montana

---

                  Submitted on Briefs:  January 8, 2025

                                Decided:  May 13, 2025

Filed:

                         _____
                                    Clerk

Chief Justice Cory J. Swanson delivered the Opinion of the Court.

¶1    J. Bowman Neely, pro se, and The J. Bowman Neely Revocable Trust (Neely) appeal the District Court's decision not to instruct the jury on a "construction defect" claim and a negligence claim.   John Grosvold, d/b/a Grosvold Excavating (Grosvold) cross-appeals the District Court's January 30, 2024 Judgment on Special Verdict denying Grosvold's request for prejudgment interest pursuant to § 27-1-211, MCA.  We affirm.

¶2    We restate the issues on appeal as follows:

> *Issue One: Did the District Court err in not instructing the jury on Neely's construction defect claim?*
>
> *Issue Two: Did the District Court err in not instructing the jury on Neely's negligence claim?*
>
> *Issue Three: Did the District Court err in denying Grosvold's request for prejudgment interest?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3    Neely is the trustee of The J. Bowman Neely Revocable Trust (Trust), which owns property in Anaconda-Deer Lodge County colloquially referred to as Bowman Camp.  In April 2021, Neely, acting as his own general contractor, hired Grosvold to perform excavation work as he directed on the property.  The parties entered into an oral contract in which Neely would pay Grosvold an hourly rate for work performed in addition to costs for materials.[1]   Grosvold worked on the property from April through October 2021.

---

[1] The only other occasion we have had to address the construction defect statute had the same factual scenario: a home owner acting as both his own general contractor and attorney, and the parties operated according to an oral contract.  There may be a trend here. *Rafes v. McMillan*, 2022 MT 13, 407 Mont. 254, 502 P.3d 674.

Grosvold's work included excavating water, septic, and electric lines, repairing foundations, building retaining walls for a residence, constructing a bridge, and grading various parts of the property. Although Neely paid Grosvold for his work through August 23, 2021, their relationship broke down and Neely thereafter refused to pay Grosvold for an invoice in the amount of $55,858. Neely also disputed and refused to pay other invoiced fees from Grosvold, including for storage of several I-beams and a safe door.

¶4 On November 1, pursuant to § 70-19-427(1), MCA, Neely sent Grosvold notice of several alleged defects for his work on the residence at Bowman Camp. Grosvold responded to Neely's letter, generally denying any of his work was to Neely's residence pursuant to the statute. Grosvold also disputed the alleged defects because he either did not work on the items in question, they were not in fact defects, or Neely caused the alleged defects according to his specific instructions.

¶5 On January 14, 2022, Grosvold filed a complaint against Neely for, as relevant here, breach of contract and prejudgment interest, asserting he was owed $64,687.80. Neely answered the complaint and counterclaimed for breach of contract, negligence, and "construction defect" pursuant to § 70-19-427, MCA.

¶6 Grosvold filed a motion for partial summary judgment, arguing that Neely's construction defect claim should be dismissed as he had not done any work to a "residence" as defined in § 70-19-426(7), MCA, nor was the Trust a "homeowner" as defined in § 70-19-426(6), MCA. The District Court reserved ruling on this issue until trial.

¶7 In January 2024, the parties tried the case before a jury in Anaconda-Deer Lodge County. During the settling of jury instructions at the close of evidence, Neely requested

3

standard jury instructions on his negligence claim. Grosvold objected, asserting the case was strictly a breach of contract case. Neely proposed that he would withdraw his negligence jury instructions if the court allowed jury instructions on his construction defect claim as the claims were "close enough in the concepts that if one is done the other isn't as necessary." The court adjourned for the day, noting it would look at the evidence presented as to the construction defect claim before issuing its summary judgment ruling.

¶8      The next morning, the court ruled it would not allow Neely's construction defect claim to go to the jury as the evidence did not substantiate "the work completed was done to a residence." The court also did not give Neely's proposed instructions on negligence, reasoning "throughout this case we have heard testimony with regards to good workman-like manner, industry standards, but at no time was there any discussion with regards to negligence. And I believe those instructions . . . would merely confuse the jury. . . . [T]he parties can argue industry standards because there's been plenty of testimony with regards to that. Based on the evidence presented, I believe we are talking about breach of contract for both parties."

¶9      The jury found Neely had breached the contract and awarded Grosvold $60,512.60 in damages. The jury denied Neely's counterclaim, finding Grosvold did not breach the contract with Neely. The District Court entered judgment for Grosvold according to the damages awarded by the jury and imposing costs, for a total amount of $60,869.50, and awarded post-judgment interest pursuant to § 25-9-205, MCA. However, the court found Grosvold was not entitled to prejudgment interest pursuant to § 27-1-211, MCA, because

4

the damages were not certain or capable of being made certain until the jury determined them from the variety of damages claimed by Grosvold.

¶10 Neely appeals the District Court's refusal to instruct the jury on negligence and construction defect claims. Grosvold cross-appeals the District Court's denial of prejudgment interest.

## STANDARD OF REVIEW

¶11 A district court's ruling on a motion for summary judgment is reviewed de novo. *McClue v. Safeco Ins. Co.*, 2015 MT 222, ¶ 8, 380 Mont. 204, 354 P.3d 604. "A party has a right to jury instructions adaptable to his or her theory of the case when the theory is supported by credible evidence." *Camen v. Glacier Eye Clinic, P.C.*, 2023 MT 174, ¶ 21, 413 Mont. 277, 539 P.3d 1062. A district court's refusal to give an offered instruction constitutes reversable error only when such refusal affects the substantial rights of the party proposing the instruction, thereby prejudicing him. *Camen*, ¶ 21; *see also* M. R. Civ. P. 61. We will affirm a district court's ruling for reaching the right result, even if it reached that result for a wrong reason. *Davis v. State*, 2015 MT 264, ¶ 8, 381 Mont. 59, 357 P.3d 320.

¶12 The decision to award prejudgment interest is reviewed to determine whether the district court correctly interpreted the law. *DeTienne v. Sandrock*, 2018 MT 269, ¶ 30, 393 Mont. 249, 431 P.3d 12. The award of interest is not discretionary if the party requesting the interest satisfies the statutory criteria. *DeTienne*, ¶ 30.

**DISCUSSION**

¶13 *Issue One: Did the District Court err in not instructing the jury on Neely's construction defect claim?*

¶14 In his counterclaims, Neely asserted three separate causes of action relevant here: Count I Breach of Contract, Count II Negligence, and Count IV Construction Defect pursuant to § 70-19-427, MCA. Count IV alleged only "Grosvold's construction work at the Property was defective." Neely further asserted he had provided Grosvold notice and Grosvold had disputed the claim under the statute governing residential construction disputes, §§ 70-19-426, through -428, MCA.

¶15 Grosvold moved to dismiss this claim, arguing the work he did was not to a residence and the Trust was not a homeowner as defined in § 70-19-426, MCA. The District Court granted the motion after evidence was presented at trial, finding Grosvold's work was not done to a residence.

¶16 Neely appeals, arguing the property was a residence for the purposes of § 70-19-427, MCA, and Grosvold's work was done to a residence. As discussed further below, while we agree with Neely that a finder of fact could have determined the property included a residence and at least some of Grosvold's work was performed on the residence, we nevertheless affirm the District Court's decision not to instruct the jury on a construction defect claim. This is because the residential construction defect statute did not create an independent cause of action in addition to Neely's breach of contract and negligence claims.

¶17 The Legislature passed Senate Bill 389 in 2003 to enact the residential construction defect statutes upon which Neely relies in §§ 70-19-426, through -428, MCA. The title of the enacting legislation provides:

> AN ACT PROVIDING AN *ALTERNATIVE DISPUTE RESOLUTION PROCEDURE* FOR RESIDENTIAL CONSTRUCTION DISPUTES; REQUIRING A CLAIMANT WITH AN ALLEGED CONSTRUCTION DEFECT TO FILE A NOTICE OF CLAIM WITH THE CONSTRUCTION PROFESSIONAL THAT THE CLAIMANT ASSERTS IS RESPONSIBLE FOR THE DEFECT AND PROVIDING THE CONSTRUCTION PROFESSIONAL WITH THE OPPORTUNITY TO RESOLVE THE CLAIM *WITHOUT LITIGATION*; LIMITING DAMAGES THAT CAN BE RECOVERED IN RESIDENTIAL CONSTRUCTION DISPUTES; AND AMENDING SECTION 27-2-208, MCA.

2003 Mont. Laws ch. 412 (emphasis added). The Act's preamble noted the need for "an alternative method to resolve legitimate construction disputes that would reduce the need for litigation." The Legislature determined "an effective alternative dispute resolution mechanism" requires notice and the opportunity for the construction professional "to resolve the claim without litigation." 2003 Mont. Laws ch. 412. The Legislature created a pre-litigation alternative dispute resolution procedure with incentives to avoid litigation, not a new cause of action. The Act requires a homeowner to give notice to the construction professional of any complaints "[p]rior to commencing an action" for a construction defect.[2] Section 70-19-427(1), MCA. The Legislature defined "action" as "any civil

---

[2] The procedures protecting construction professionals are triggered only if the professional has given the residential homeowner notice of the statute. *See* § 70-19-427(8), MCA. The record is silent as to whether Grosvold provided notice of the requirements of §§ 70-19-426, through -428, MCA. Although this section was enacted to provide construction professionals like Grosvold an alternative to litigation, his continued denial that he worked on a residence could take him out of the statutory protection the Legislature intended.

7

lawsuit or action *in contract or tort . . . .*" Section 70-19-426(1)(a), MCA (emphasis added). If alternative dispute resolution fails, the homeowner may then proceed with an action in contract or tort. *See* § 70-19-427(3)(a)–(b), (4)(c)–(d), MCA.

¶18 Section 70-19-426(7), MCA, defines residence in part as a "single-family house." A "construction defect" is a deficiency in or arising out of the supervision, construction, or remodeling of a residence resulting from (1) defective materials, products, or components used in the construction or remodeling of a residence; (2) violation of applicable building, plumbing, or electrical codes in effect at the time of the construction or remodeling of a residence; or (3) failure to construct or remodel a residence in accordance with contract specifications or accepted trade standards. Section 70-19-426(4), MCA. Finally, a "claimant" is a "home owner or association that asserts a claim against a construction professional concerning a defect in the construction or remodeling of a residence" and a "home owner" includes any person who contracts for the remodeling or construction of a residence. Section 70-19-426(3), (6), MCA.

¶19 Grosvold first asserts a trust is not included in the definition of home owner and the Trust does not reside at the property, but holds it for the benefit of others; thus it is not covered by § 70-19-427, MCA. However, a "person" is included in the definition of home owner, and the Legislature has included trusts within the definition of persons in the law. *See* § 1-1-201(1)(d), MCA (terms of wide applicability defining "person" to include a corporation or other entity); § 72-38-103(12), MCA (uniform trust code defining person to include a trust). If a trust is unable to reside in a home, so would a company, firm, partnership, corporation, or association. But each of these incorporeal entities are home

8

owners under § 70-19-426(6), MCA, who may contract for construction or remodeling of a single-family home. And the statute does not require the home owner to actually live in the residence. We do not insert what has been omitted from the statute. Section 1-2-101, MCA. Grosvold is incorrect; a trust qualifies as a home owner under the statute.

¶20 Grosvold further argues any alleged performance defects at the property were not a part of "construction[] or remodeling of a residence" because all the work he did was outdoors. Here, Grosvold's claim would fail if not for other reasons to affirm the District Court. While it is arguable that some of Grosvold's work was not performed on a residence—such as building an access bridge—there likely exists a genuine factual dispute that would be best resolved by a jury. For example, Grosvold admits he excavated water, sewer, and gas lines connecting to the residence as part of the remodel. Grosvold also excavated a foundation for a cabin and built footers for retaining walls. The fact that this work was performed outside is not determinative; a jury could have found these systems are integral to a residence and are part of a single-family home. The District Court erred in resolving this factual dispute in Grosvold's favor by finding that no work was done on a residence. Disputed questions of fact are for a jury to decide. *E.g.*, *State v. Van Haele*, 207 Mont. 162, 166, 675 P.2d 79, 81 (1983).

¶21 Although the District Court erred in finding Grosvold did not perform any work on a residence, we nevertheless affirm its refusal to instruct the jury on a "construction defect" claim for different reasons. *Davis*, ¶ 8. We hold the Legislature did not enact §§ 70-19-426, through -428, MCA, with the intention to create a new cause of action in addition to those referenced in the statute, including breach of contract or tort. Instead, the

Legislature enacted these sections to create an alternative method for resolving these types of claims prior to litigation when a single-family home has been constructed negligently or in breach of a contract. This is explicit in both the plain text of the statute and the preamble of the enacting legislation, as discussed above.

¶22   Section 70-19-426(1)(a), MCA, defines an action as "any civil lawsuit or action *in contract or tort* . . . brought against a construction professional to assert a claim . . . for damage or the loss of use of real or personal property caused by a defect in the construction or remodeling of a residence." (Emphasis added.) Section 70-19-427(1), MCA, through a cross-reference to § 27-2-208, MCA, requires that such actions be brought within "10 years after completion" of the construction or remodeling. Section 70-19-427(1)–(5), MCA, lays out the notice requirements before a plaintiff may file a construction defects suit. Section 70-19-428, MCA, limits the damages a plaintiff may recover in a construction defects suit.[3]

¶23   The purpose of §§ 70-19-426, through -428, MCA, is to reduce litigation, not to create new causes of action, to usurp common law causes of action, or to give claimants two bites at the same apple.

¶24   Whether the claimant alleges "construction defect," "negligence," or "breach of contract" in the complaint is irrelevant for purposes of this case. Montana law does not require strict compliance with terms of art and legal phraseology when pleading a cause of

---

[3] Perhaps as an incentive for homeowners and construction professionals to resolve disputes using this alternative dispute resolution process, the Legislature provides for attorney fees for homeowners who successfully sue after the pre-litigation resolution process fails. Section 70-19-428(1)(d), MCA; *see also Rafes*, ¶ 14 n.4 (declining to extend claimant's right to attorney fees to construction professionals pursuant to § 70-19-428(1)(d), MCA).

action. *State Med. Oxygen & Supply v. Am. Med. Oxygen Co.*, 230 Mont. 456, 462, 750 P.2d 1085, 1089 (1988).

¶25 However titled, to allow Neely to bring a construction defect claim in addition to his breach of contract and negligence claims would merely be duplicative. This is illustrated by Neely's counterclaims. Neely's first counterclaim for breach of contract alleged Grosvold breached their contract by performing defective work. His counterclaim for construction defect also (and only) alleged Grosvold performed defective work. Neely does not point to anything unique in his asserted cause of action that was not already decided by the jury in finding Grosvold did not breach their contract. Essentially, by accepting Neely's construction defect cause of action, the jury would have been asked to decide the same issue twice. The District Court did not err in refusing to instruct the jury on a construction defect claim, which is not a separate cause of action beyond those long recognized in the common law but is instead a legislative-created process to promote resolution of disputes prior to litigation.

¶26 *Issue Two: Did the District Court err in not instructing the jury on Neely's negligence claim?*

¶27 Neely argues the District Court erred in not instructing the jury on negligence in addition to breach of contract. Neely asserts the District Court "hamstrung" his arguments that Grosvold had an obligation to perform work in a reasonable manner and consistent with industry standards. Neely argues the District Court's decision had the effect of a directed verdict on Neely's negligence claim in the guise of declining a jury instruction. *See Cleveland v. Ward*, 2016 MT 10, ¶ 26, 382 Mont. 118, 364 P.3d 1250. The parties

11

accordingly disagree on our standard of review: abuse of discretion as to denial of a jury instruction or de novo as to a directed verdict. As Neely points out however, even with the more deferential standard, it would be an abuse of discretion for the District Court to not instruct the jury on a viable claim. *Camen*, ¶ 21.

¶28 Generally, a party's claim is based in contract when it arises solely from an alleged breach of specific terms in an agreement. *Dewey v. Stringer*, 2014 MT 136, ¶ 8, 375 Mont. 176, 325 P.3d 1236. "However, 'a ground of liability in tort may coexist with a liability in contract, giving the injured party the right to elect which form of action he will pursue.'" *Dewey*, ¶ 8 (quoting *Garden City Floral Co. v. Hunt*, 126 Mont. 537, 543, 255 P.2d 352, 356 (1953)). A contract carries with it the obligation to do the work in a reasonably skillful manner, "and a negligent failure to observe any of these conditions is a tort, as well as a breach of the contract." *Hunt*, 126 Mont. at 541, 255 P.2d at 354–55 (internal quotation omitted). But there must be some breach of duty distinct from breach of contract to support an independent tort claim. *Dewey*, ¶ 8.

¶29 Initially, we note many of Neely's claims sound only in contract, and not in tort. *See Dewey*, ¶ 22 n.1 (giving examples of situations that sound only in contract and those that sound in both contract and tort). For example, Neely alleged Grosvold installed a bridge at a height higher than shown in the plans or as agreed. Neely does not allege this was defective such that it was negligent. This, and other alleged defects, sound purely in contract and were thus fully decided by the jury and are not at issue here.

¶30 Other allegations, such as heat pump lines being improperly installed, *could* sound in both contract and tort (if, for example, the splices that Grosvold used did not comply

12

with the building code) but do not here because Neely does not allege the splices did not comply with building codes but merely that the plans called for fusion welds instead of splices. Finally, it is possible other allegations, such as damage to existing systems, may sound in both contract and tort if the damage was caused because improper care was taken.

¶31 Neely argues the court effectively granted a directed verdict as to his negligence claim, and ordinarily his point would be well taken. Indeed, Grosvold argues on appeal the District Court correctly refused negligence jury instructions, but his claims sound more like fact-based assertions to convince a jury in the face of conflicting evidence.

¶32 For example, Neely alleged Grosvold left a water line uncapped, which created a sinkhole. Grosvold responded that plumbers, not he, improperly connected a water line creating the sinkhole. Neely claimed Grosvold improperly built a container pad, creating an excessive drop off. Grosvold responded this was because Neely instructed him not to disturb landscaping that would have been damaged if he graded the drop off from the container pad. These are competing arguments regarding negligence, they are not reasons to deny a party jury instructions on an issue. Such arguments are better left for the jury to decide. *Graham-Rogers v. Wells Fargo Bank, N.A.*, 2019 MT 226, ¶ 25, 397 Mont. 262, 449 P.3d 798 ("Once a duty has been established, the breach of that duty is a question of fact to be resolved by a jury." (quotation omitted)). A directed verdict would be proper only if Neely had failed to present any evidence as to an element or claim of negligence. *Cleveland*, ¶ 26.

¶33 But this case presented a unique situation where Neely's negligence claims were embedded in his breach of contract claims because of the way he pled and argued the case.

13

They were alternative claims. Nevertheless, the theories of liability overlapped in that they pled the same facts and requested the same damages. From the beginning, Neely's counterclaims for breach of contract and negligence were presented almost identically. In his claim for breach of contract, Neely alleged Grosvold was under a contractual duty to complete his work in conformance with generally accepted standards in the construction industry. Additionally, Neely alleged Grosvold breached his contract "by performing defective, deficient work that was not in conformance with generally accepted standards in the construction industry." In his counterclaim for negligence, Neely alleged Grosvold breached a duty to work with reasonable care.

¶34    Throughout trial, the parties presented evidence on whether Grosvold's work was defective and whether it comported with industry standards. Far from hamstringing Neely's arguments, the District Court recognized this and instructed accordingly. The District Court reasoned the parties could argue compliance with industry standards under the breach of contract jury instructions, which it felt adequately covered the negligence-type arguments at trial. Instruction 14 stated a "contract for construction implies that the contractor will perform the work in a reasonably skillful and workmanlike manner."

¶35    Indeed, Neely recognized at the close of evidence his construction defect and negligence claims were "close enough in the concepts that if one [claim] is done the other isn't as necessary" and the construction defect claim was more appropriate based on the claims and evidence presented at trial. Thus, Neely intended to withdraw his negligence claim if the proposed construction defect (on breach of contract) instructions were given.

14

Although the District Court did not instruct the jury on construction defect, it did instruct the jury on breach of contract. As discussed above, Neely's breach of contract claim was the same as his construction defect claim. Neely does not assert any claims for damages were not covered by his breach of contract cause of action. Neely's substantial rights were not affected, as indicated by Neely's intention to withdraw his negligence claim if the construction defect claim was given, and the jury being instructed on a claim identical to his construction defect claim.

¶36 The parties argued about industry standards in depth during closing arguments. Neely repeatedly argued to the jury that Grosvold's work was "not well done," not "skillful," and was "defective." Neely described Instruction 14 as "one of the most important instructions" the jury will have and asserted that performing the work in a reasonably skillful and workman-like manner was "part of the contract." Neely then discussed the evidence that he claimed showed Grosvold's work was not done in a skillful manner, was deficient, and was improperly done.[4] Grosvold, on the other hand, repeatedly defended himself against Neely's claims that his work was defective. He also argued that any defects were caused by Neely's own incompetence as a general contractor.

¶37 The jury found Grosvold did not breach the contract, while Neely did by refusing to pay Grosvold for work performed. Pursuant to Instruction 14, the jury thus found Grosvold performed the work "in a reasonably skillful and workmanlike manner," as implied in

---

[4] Neely's emphasis on breach of contract in closing argument is less important to our analysis, since the District Court had refused his negligence instructions, and he could only argue for breach of contract. But it does illustrate that he was essentially arguing the same duty, breach, and damages under either claim.

15

every oral contract which may give rise to a claim for negligence or breach of contract. *See Hunt*, 126 Mont. at 541, 255 P.2d at 354–55. Pursuant to Instruction 16, the jury also found Grosvold's conduct conformed to "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." *See* § 28-1-211, MCA.

¶38 The jury effectively weighed Neely's general negligence claim when it decided Grosvold did not breach the contract. And Neely did not argue Grosvold's work was negligent per se or that more specific negligence instructions were necessary under the facts of the case. Nor does Neely discuss any independent legal duty that Grosvold owed him under tort law beyond those duties already presented to the jury in his breach of contract claim. *Folsom v. Mont. Pub. Emps. Ass'n*, 2017 MT 204, ¶¶ 21–22, 388 Mont. 307, 400 P.3d 706 ("[A]lternative claims based on the same breach of the same legal duty are merely duplicative or subsumed in one or the other and, thus, not independently cognizable in the same action.").

¶39 Consequently, we hold—even if the District Court could have instructed the jury on negligence as well as breach of contract for some of the claims—it was harmless error because the jury necessarily decided Grosvold's work was not defective when it decided he did not breach the contract. *See* M R. Civ. P. 61; *Rollins v. Blair*, 235 Mont. 343, 348, 767 P.2d 328, 331 (1989) ("A party is not prejudiced by the failure to give an offered instruction where the subject matter is adequately covered by other instructions submitted by the court to the jury." (internal quotation omitted)). Based on the evidence and arguments presented at trial, the jury decided these issues such that Neely's substantial rights were not affected. A new trial is not warranted.

16

¶40    *Issue Three: Did the District Court err in denying Grosvold's request for prejudgment interest?*

¶41    Grosvold alleges he was entitled to prejudgment interest for the amount the jury awarded in its verdict. The District Court denied the award of prejudgment interest "because Grosvold was not awarded the full amount of his final invoice, the damages requested were a combination of various claims, and the contract in dispute was hourly plus materials." As such, the court found the amount in controversy was not readily ascertainable or capable of being made certain until the jury's determination.

¶42    Pursuant to § 27-1-211, MCA, a party is entitled to prejudgment interest when a prevailing party's amount of recovery is capable of being made certain by calculation. *Ryffel Family P'ship v. Alpine Country Constr., Inc.*, 2016 MT 350, ¶ 35, 386 Mont. 165, 386 P.3d 971. The award is not discretionary if three requirements are met: (1) an underlying monetary obligation exists; (2) the amount of recovery is capable of being made certain; and (3) the right to recovery vests on a particular day. *Ryffel*, ¶ 35; *DeTienne*, ¶ 30. Prejudgment interest serves to fully compensate an injured party for the loss of use of their money. *DeTienne*, ¶ 30. But if the damages at issue are uncertain or disputed, an award of prejudgment interest is inappropriate because "[n]o interest can run until a fixed amount of damages has been arrived at, either by agreement, appraisal, or judgment." *Ryffel*, ¶ 35 (internal quotation omitted); *see also DeTienne*, ¶ 35. "Damages arising . . . for the *definite* unpaid balance of a contract or account qualify for prejudgment interest because the damages are a sum certain." *DeTienne*, ¶ 35 (emphasis added). However, when a factfinder is not bound by a particular amount and could decide on nearly any award

17

beyond or below that claimed, prejudgment interest is not appropriate. *DeTienne*, ¶ 35; *Ryffel*, ¶ 35.

¶43 In *DeTienne*, the district court awarded nearly $1.3 million in damages stemming from two separate entities and imposed prejudgment interest on the full amount. *DeTienne*, ¶ 31. We addressed each pool of damages separately on appeal. In the first, we upheld the award of prejudgment interest, which was readily ascertainable based almost exclusively on lost lease payments pursuant to a contract. *DeTienne*, ¶ 32. In the second pool, we reversed the district court's award of prejudgment interest because the damages relied on projected operating expenses that were disputed and required a factual determination at trial. *DeTienne*, ¶¶ 34, 36.

¶44 In *Ryffel*, we reviewed cases where prejudgment interest was not certain until trial. In *Northern Montana Hospital v. Knight*, 248 Mont. 310, 811 P.2d 1276 (1991), damages were not certain or capable of being made certain by calculation because "the jury's award did not comport with any amount claimed by the hospital at trial." *Ryffel*, ¶ 37. We affirmed the district court's denial of prejudgment interest in *Ryffel* because the terms of the agreement between the parties was premised upon oral contracts and the parties disputed each other's recollection of the terms. *Ryffel*, ¶ 38. Thus, "the jury could have reasonably determined any number of sums as an appropriate award for Alpine." *Ryffel*, ¶ 38.

¶45 The facts presented here are similar. Neely and Grosvold entered an oral contract and disagreed as to whether certain work was defective, whether the parties had orally modified their contract so Grosvold would fix alleged deficiencies, or whether Neely

18

agreed to pay for the storage of materials on Grosvold's land or other miscellaneous items such as a safe door. Like in *Knight*, the jury did not return a verdict for the full sum Grosvold sought. Grosvold argued to the jury he was entitled to $64,687.80, with $55,858 of that coming from his last invoice, which included more than $19,000 in materials. Additionally, he argued he was entitled to $3,000 for the storage of I-beams, $3,200 to allow a contractor to remove the I-beams from his property, and $2,500 for a safe door. The jury awarded Grosvold $60,512.60. It is not clear how they arrived at that figure. It is not the amount Grosvold requested minus some figure like the safe door or I-beams that can easily be determined. *Compare DeTienne*, ¶¶ 31–36 (analyzing multiple verdicts separately). The jury may have decided to award Grosvold some of the materials or hours he worked on his invoice but not others. As in *Ryffel*, ¶ 38, it could have reasonably determined any number of sums was appropriate. The amount of recovery was not capable of being made certain until the jury returned its verdict. The District Court did not err in denying prejudgment interest.

## CONCLUSION

¶46 We affirm the District Court's decision to grant summary judgment on Neely's construction defect claim for different reasons. The Legislature created a pre-litigation notice and resolution procedure for residential construction defects when it enacted §§ 70-19-426, through -428, MCA, not a new cause of action in addition to Neely's breach of contract or negligence claims. The District Court's refusal to instruct the jury on construction defect was correct. Additionally, Neely's substantial rights were not affected by the District Court's refusal to instruct the jury on negligence as the instructions and

19

argument related to breach of contract adequately covered the disputed subject matter. The District Court did not err in refusing to grant prejudgment interest on the jury's award of damages, which was not capable of being made certain until trial.

¶47  Affirmed.

/S/ CORY J. SWANSON

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON
/S/ LAURIE McKINNON
/S/ JIM RICE